12 P.3d 603 (2000)
142 Wash.2d 165
In the Matter of the Personal Restraint Petition of Brent Allen DAVIS, Petitioner.
No. 68053-1.
Supreme Court of Washington, En Banc.
Argued May 16, 2000.
Decided November 2, 2000.
*604 Christine Gregoire, Attorney General, Frederick John Caruso, Asst. Atty. Gen., Olympia, Amicus Curiae on Behalf of Attorney General.
Brent Allen Davis, Bellevue, Helen Allison Anderson, Seattle, for Petitioner.
Norm Maleng, King County Prosecutor, William M. Berg, Ann Marie Summers, Deputy's King County Prosecutor, Seattle, for Respondent.
MADSEN, J.
Petitioner Brent Allen Davis pleaded guilty to two counts of possession of marijuana with intent to manufacture or deliver. RCW 69.50.401(a)(1)(iii). His convictions *605 were based on two marijuana grow operations housed in separate single family dwellings. Davis brings this personal restraint petition alleging his two grow operations were one statutory "unit of prosecution," and thus his two convictions violate the double jeopardy clauses of the state and federal constitutions under this Court's decision in State v. Adel, 136 Wash.2d 629, 965 P.2d 1072 (1998). In a published split decision, the Court of Appeals, Division One, denied Davis' petition. In re Personal Restraint of Davis, 95 Wash.App. 917, 977 P.2d 630 (1999). We affirm.

FACTS
The facts, which Davis agrees to, are set forth in the Certification for Probable Cause. State v. Davis, No. 31813-6-I, slip op. at 2, 1994 WL 908460 (1994). This certification provides in part:
On January 31, 1992, the King County Police served three narcotic search warrants upon the premises located at 4607 264th NE ("264th address"), 22122 NE 13th Pl. ("13th address") and 3806 230th Ct. ("230th address"), King County, Washington. The warrants directed the police to seize any controlled substances, dominion and control papers, and paraphernalia items present in the residences. The police first served the warrant upon the 264th address and located in the garage of the home a marijuana grow operation, including approximately 90 suspected marijuana plants, halide lights, ballasts, timers, and fans, which are items used to grow and cultivate marijuana. The police found an Ohaus scale and numerous papers indicating that defendant Telford lived in the subject residence. They also found two receipts in the house, both in the name of "Brad Alan", listing the 13th address and the 230th address. [Count I]
The police next executed the warrant upon the 13th address. In the back of the house, the police located another grow operation, with approximately 80 suspected marijuana plants and grow paraphernalia items. They found paperwork in the house with Telford's name and in the name of a "Brian Miller". A boat was parked in the garage of the house which was owned by defendant Davis.... [T]he police met with ... the owner of the 13th address who told the police that Davis rented the home under the name of "Brian Miller" together with his girlfriend defendant Denaxas. He also turned over the rental agreement which showed "Brian Miller" and Denaxas as the lessees of the house. [Count II]
The police then served the warrant upon the 230th address. Parked in front of this address was a jeep [sic] Cherokee belonging to Davis.... In the basement police found a grow farm which apparently at one time was significantly larger. The police confiscated approximately 200 "starter" plants and several pounds of suspected dried marijuana found in the living room. They also located approximately $4600 in cash, an Ohaus scale, and numerous papers in the name of Brent Davis. The police interviewed the owner of the home ... who stated that Davis had rented the house under the name of "Brad Alan".... [Count III]
On February 4, Telford was arrested by the police and signed a written confession as to the entire operation. He told the police that he had been hired by Davis to tend the grow operation at the 264th address which Telford stated was where he lived. Telford stated that Davis provided the materials for the grow and agreed to pay Telford $20,000 as "commission" for the first "harvest". Davis also agreed to pay Telford's rent on the house and the utilities. Telford further stated that Davis had set up grows at both the 13th and 230th addresses[.]
. . . .
The circumstances indicate that Davis is using the three homes for grow operations and is making a significant amount of money from this "business".
State v. Davis, slip op. at 2-3 (quoting Certification for Probable Cause).
On May 19, 1992, the King County Prosecutor ("State") charged Davis with three counts of possession with intent to manufacture or deliver marijuana in violation of the Uniform Controlled Substances Act. RCW *606 69.50.401(a)(1)(iii).[1] The State dismissed the first count and Davis pleaded guilty to the latter two.
At his sentencing hearing in King County Superior Court, Davis argued his two convictions should be treated as one crime for purposes of computing his offender score because they "encompass the same criminal conduct...." See RCW 9.94A.400(1)(a). The trial judge rejected this contention, stating:
Looking at the facts of this case, I find two different marijuana grow operations. I find that the defendant is guilty of two different crimes.... I do not find the same criminal conduct. I find that there were significant factual differences between the associates involved in the different charges, between the names used, between the nature of the grows.... I think he spread his risk by having various operations going and this enterprise was a business, calculated risk/reward assessment.... If they had all been in the same house it would have been one crime....
Verbatim Report of Proceedings (Nov. 4, 1992) at 8-9.
Davis was assigned an offender score of three for each count and sentenced to concurrent terms of twelve months.[2] He brought a direct appeal, contending the trial court erred in finding his two marijuana grow operations were not part of the same course of criminal conduct for purposes of computing his offender score. On July 18, 1994, the Court of Appeals affirmed his sentence in an unpublished decision.
On October 15, 1998, this Court issued its opinion in State v. Adel, 136 Wash.2d 629, 965 P.2d 1072. Davis filed his personal restraint petition on December 10, 1998. Relying on Adel, Davis argues his two separately located marijuana grow operations constituted only one statutory "unit of prosecution," and hence, his two convictions violated his double jeopardy rights under the state and federal constitutions. The Court of Appeals denied Davis' petition, holding that under a unit of prosecution analysis a "separate and distinct intent to manufacture drugs" is required, and this intent is established by Davis' two grow operations. In re Personal Restraint of Davis, 95 Wash.App. at 924, 977 P.2d 630 (emphasis omitted). Judge Becker dissented, reasoning that the two grow operations evidence only one "intention to grow marijuana for commercial purposes." Id. at 926, 977 P.2d 630 (Becker, J., dissenting). Davis sought discretionary review. The University of Washington Appellate Advocacy Clinic represents Davis. The Washington State Attorney General (Attorney General) appears as amicus curiae.

Analysis
"To obtain relief in this personal restraint petition, the defendant must show he was actually and substantially prejudiced either by a violation of his constitutional rights or by a fundamental error of law." In re Personal Restraint of Benn, 134 Wash.2d 868, 884-85, 952 P.2d 116 (1998) (citing In re Personal Restraint of Lord, 123 Wash.2d 296, 303, 868 P.2d 835 (1994); In re Personal Restraint of St. Pierre, 118 Wash.2d 321, 329, 823 P.2d 492 (1992); In re Personal Restraint of Hews, 99 Wash.2d 80, 87, 660 P.2d 263 (1983); In re Personal Restraint of Cook, 114 Wash.2d 802, 810, 792 P.2d 506 (1990)).
Davis contends his two marijuana grow operations, each at a different location, constitute only one "unit of prosecution" under RCW 69.50.401(a)(1)(iii). Thus, Davis argues *607 that his multiple convictions punished him twice for the same statutory "unit of prosecution" in violation of the double jeopardy clauses of the state and federal constitutions. The State argues that each of Davis' grow operations served as the basis for a separate statutory offense.
The double jeopardy clause of the fifth amendment to the United States Constitution provides: "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb...." Washington's analogous constitutional provision, found in article I, section 9, proclaims: "No person shall be ... twice put in jeopardy for the same offense." Const. art. I, § 9. The federal and state provisions afford the same protections and are "identical in thought, substance, and purpose." State v. Schoel, 54 Wash.2d 388, 391, 341 P.2d 481 (1959); see also Adel, 136 Wash.2d at 632, 965 P.2d 1072. "Double jeopardy is implicated whether or not [a defendant's] sentences are served concurrently or consecutively." Adel, 136 Wash.2d at 632, 965 P.2d 1072 (citing Ball v. United States, 470 U.S. 856, 865, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985)).
"To determine if a defendant has been punished multiple times for the same offense, this court has traditionally applied the "`same evidence'" test ..., [which] mirrors the federal `same elements' standard adopted in Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)." Adel, 136 Wash.2d at 632, 965 P.2d 1072. But that test applies only when a defendant is convicted of violating "several statutory provisions." Id. at 633, 965 P.2d 1072 (emphasis omitted). "If a defendant is convicted of violating a single statute multiple times, the proper inquiry ... is `what "unit of prosecution" has the Legislature intended as the punishable act under the specific criminal statute.'" State v. Till, 139 Wash.2d 107, 113, 985 P.2d 365 (1999) (quoting Adel, 136 Wash.2d at 634, 965 P.2d 1072). Although unit of prosecution cases are of constitutional dimension, they are resolved by questions of statutory interpretation and legislative intent. Adel, 136 Wash.2d at 634, 965 P.2d 1072.
Subject only to the constraints of the eighth amendment, the Legislature may define and punish criminal conduct. Id. Nevertheless, "[i]f the Legislature has failed to denote the unit of prosecution in a criminal statute, the United States Supreme Court has declared the ambiguity should be construed in favor of lenity." Id. at 634-35, 965 P.2d 1072 (citing Bell v. United States, 349 U.S. 81, 84, 75 S.Ct. 620, 99 L.Ed. 905 (1955)). However, "[t]his in no wise implies that language used in criminal statutes should not be read with the saving grace of common sense with which other enactments, not cast in technical language, are to be read." Bell, 349 U.S. at 83, 75 S.Ct. 620.
"`The first step in the unit of prosecution inquiry is to analyze the criminal statute.'" Till, 139 Wash.2d at 113, 985 P.2d 365 (quoting Adel, 136 Wash.2d at 635, 965 P.2d 1072). Davis was convicted under RCW 69.50.401(a)(1)(iii), which provides:
(a) Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance.
(1) Any person who violates this subsection with respect to:
. . . .
(iii) any other controlled substance classified in Schedule I ... is guilty of a crime and upon conviction may be imprisoned for not more than five years, fined not more than ten thousand dollars, or both....
RCW 69.50.401(a)(1)(iii) (emphasis added). The term "manufacture" is statutorily defined to include "the production, preparation, propagation, compounding, conversion, or processing of a controlled substance," RCW 69.50.101(p), and "production" "includes the manufacturing, planting, cultivating, growing, or harvesting of a controlled substance." RCW 69.50.101(y).
Davis argues RCW 69.50.401(a)(1)(iii) fails to denote any "unit of prosecution" and, thus, is ambiguous on its face. He urges that the rule of lenity applies and that he should have been charged with one count of possession with intent to manufacture.
In Adel, we held that two separately located "stashes" of marijuanaone found in the *608 defendant's convenience store (less than 0.2 grams) and the other found in the defendant's car parked in front of the store (0.1 grams)constituted one statutory unit of prosecution under Washington's simple possession statute. Adel, 136 Wash.2d at 631, 636, 965 P.2d 1072. The statute at issue, RCW 69.50.401(e), provides that "any person found guilty of possession of forty grams or less of marijuana shall be guilty of a misdemeanor." RCW 69.50.401(e). Because this statute "fails to indicate whether the Legislature intended to punish a person multiple times for simple possession based upon the drug being stashed in multiple places," the rule of lenity favored a conclusion that Adel had committed "only one count of simple possession." Adel, 136 Wash.2d at 635, 965 P.2d 1072.
In ascertaining "legislative intent regarding the unit of prosecution for a simple possession crime," we referred to the "40 gram cutoff between a misdemeanor and a felony." Id. at 636, 965 P.2d 1072. In doing so, we noted that "the Legislature focused solely on the quantity of the drug, and did not reference the spatial or temporal aspects of possession." Id. We held that "[t]he possession statute does not authorize multiple convictions based upon a drug being stashed in multiple places within a defendant's actual or constructive possession." Id. Since "[a]ll of the drugs found ... were within Adel's dominion and control," he could be convicted of only one crime. Id.
According to Davis, RCW 69.50.401(a)(1)(iii) should be interpreted in the same manner as the statute at issue in Adel. However, RCW 69.50.401(a)(1)(iii) makes no reference to quantity. The Court of Appeals reasoned that this indicates "the Legislature must not have intended to define the unit of prosecution in possession with intent to manufacture cases based on the quantity of drugs possessed." In re Personal Restraint of Davis, 95 Wash.App. at 922, 977 P.2d 630. The court focused on the intent prong of RCW 69.50.401(a)(1)(iii), holding that the "`unit of prosecution' in possession with intent to manufacture cases is a separate and distinct intent to manufacture drugs." Id. at 924, 977 P.2d 630 (emphasis omitted). Under the court's holding, "if a defendant's alleged drug manufacturing operations `are sufficiently differentiated by time, location, or intended purpose,' the defendant may be convicted multiple times for possession with intent to manufacture without violating double jeopardy." Id. at 925, 977 P.2d 630 (emphasis added) (quoting Rashad v. Burt, 108 F.3d 677, 681 (6th Cir. 1977)). We agree.
RCW 69.50.401(a)(1)(iii) punishes both possession of narcotics with intent to deliver and possession with intent to manufacture; however, most of the decisional authority in this area comes from "intent to deliver" cases. This court's discussion of two such cases, State v. McFadden, 63 Wash.App. 441, 820 P.2d 53 (1991) and State v. Lopez, 79 Wash. App. 755, 904 P.2d 1179 (1995), in Adel is instructive.
In McFadden, the defendant was charged with two counts of possession of cocaine with intent to deliver based on 83.9 grams of cocaine found in his van and another 5.5 grams brought into an apartment by McFadden during a buy bust operation.
One unit of prosecution was satisfied by McFadden's possession of drugs in the apartment. He intended to sell the 5.5 grams to the occupants of the apartment.... The drugs found in McFadden's van clearly formed a second unit of prosecution. McFadden possessed the drugs in the van with an obvious intent to deliver them to unknown buyers in the future. The two crimes charged in McFadden were not premised on the fact that the drug was found in two different locations. The two crimes were premised on the showing that McFadden had two separate and distinct intents to deliver drugs in his possessionone intent to sell in the present to the occupants of the apartment and one intent to sell drugs in the future.
Adel, 136 Wash.2d at 638, 965 P.2d 1072 (some emphasis added).
The facts of Lopez stand in contrast to those of McFadden. In Lopez, the defendant "was arrested in a car during a controlled drug buy with an informant. The cocaine he had just purchased was found on the floorboard of the car, and additional cocaine, *609 unrelated to the present deal, was found on Lopez's person." Id. at 638-39, 965 P.2d 1072. The cocaine found on Lopez's person was packaged in "14 bindles and appeared to be intended for distribution." Id. at 639, 965 P.2d 1072. "Lopez was charged with two counts of possession with intent to deliver, one count based on the cocaine he had just purchased, and the other count based on the separate cocaine found on his person." Id. The facts of Lopez supported only one criminal conviction:
Lopez may have had two distinct quantities of cocaine under his dominion and control, and evidence showed the two quantities came from separate sources, but none of that evidence was relevant to the unit of prosecution for possession with intent to deliver. The evidence failed to establish more than one intent to deliver the drugs in the futurethere were not two distinct intents to deliver, as there were in McFadden.

Id. The "results of Lopez and McFadden compliment [sic] each other when the proper unit of prosecution analysis is applied to both cases." Id.
Implicit in Adel's discussion of Lopez and McFadden is the recognition that conduct demonstrating an intent to deliver forms the unit of prosecution under RCW 69.50.401(a)(1)(iii). We conclude that a "separate and distinct" intent to manufacture drugs supports separate units of prosecution under the statute.
Our holding in Adel is not to the contrary. In Adel we focused on the quantity of drugs within the defendant's dominion and control, rather than on the defendant's intent. That is because simple possession, unlike possession with intent to manufacture or deliver, is a strict liability offense. State v. Hernandez, 95 Wash.App. 480, 484, 976 P.2d 165 (1999) (citing State v. Vike, 125 Wash.2d 407, 412, 885 P.2d 824 (1994)); but see State v. Staley, 123 Wash.2d 794, 799, 872 P.2d 502 (1994) (defendant may still assert the defense of "unwitting possession"). Thus, the intent to possess marijuana is itself irrelevant.
Davis argues, though, that RCW 69.50.401(a)(1)(iii) does not indicate what constitutes a "separate and distinct" intent to manufacture drugs and is therefore ambiguous. We disagree. The question of whether a defendant's conduct evidenced an intent to manufacture drugs is factual. "[E]ven where the Legislature has expressed its view on the unit of prosecution, the facts in a particular case may reveal more than one `unit of prosecution' is present." State v. Bobic, 140 Wash.2d 250, 266, 996 P.2d 610 (2000); cf. Rashad v. Burt, 108 F.3d 677, 681 (6th Cir. 1997) ("separate convictions for possession of the same controlled substance [with intent to deliver] will not violate the Double Jeopardy Clause if the possessions are sufficiently differentiated by time, location, or intended purpose.") (emphasis added)).
Here, each of Davis' grow operations was located a significant distance from the other. One operation was in Redmond, the other in Issaquah. Each of Davis' grow operations contained all the equipment necessary to produce marijuana. By setting up two wholly self-contained grow operations, a "separate and distinct" intent to manufacture marijuana at each location is evident. Indeed, as noted by the trial court, by having separate grow operations Davis was able to spread his risks. In the event that only one grow operation had been uncovered, the other would have continued to thrive.
Amicus curiae Attorney General argues, however, in favor of a much broader construction of RCW 69.50.401(a)(1)(iii) than that offered by the State. Under the Attorney General's argument, each individual "harvesting" of marijuana may serve as the basis for a separate unit of prosecution in possession with intent to manufacture cases. This argument is based on the statutory definitions found in RCW 69.50.101. "Manufacture" is defined to include "the production... of a controlled substance...." RCW 69.50.101(p). "`Production' includes the manufacturing, planting, cultivating, growing, or harvesting of a controlled substance." RCW 69.50.101(y).
We do not accept the argument because, if a defendant can be prosecuted for each harvest, then under the same logic he could be *610 charged with each step in the manufacturing process. A separate charge could be based on the "planting" of a marijuana seed, the "cultivating" of the crop, the "growing" of the crop, and the "harvesting" of the crop. We construe the statute to mean that drug manufacturing will invariably include "planting," "cultivating," "growing," and "harvesting" marijuana as a continuing course of conduct. See State v. Ammons, 136 Wash.2d 453, 457, 963 P.2d 812 (1998) ("[t]his court will not construe statutes in a way that leads to unlikely, absurd, or strained results").

CONCLUSION
We hold that each of Davis' separately located and self-contained marijuana grow operations properly served as the basis for a separate unit of prosecution under RCW 69.50.401(a)(1)(iii). Accordingly, Davis' petition is denied.
GUY, C.J., SMITH, ALEXANDER, TALMADGE, BRIDGE, JJ., and HUNT, J. Pro Tem., concur.
SANDERS, J. (dissenting).
RCW 69.50.401(a)(1)(iii) criminalizes "possess[ion] with intent to manufacture" illicit drugs. The issue here is whether simultaneous grow operations at different locations are a single "unit of prosecution" or whether multiple, simultaneous, grow operations support multiple, separate, criminal prosecutions and penalties. I agree with Court of Appeals Judge Becker's dissenting opinion that "intent to manufacture" cannot be subdivided by location, volume, or stage of production. Rather, "intent to manufacture" is a single, legislatively defined, unit of prosecution without regard to the manner, extent, or location of that manufacture.
The purpose of the Fifth Amendment to the United States Constitution and its Washington counterpart, article I, section 9, is to guarantee no citizen will twice be placed in jeopardy for the same offense.[1] In State v. Adel, 136 Wash.2d 629, 632, 965 P.2d 1072 (1998), we observed, "[o]ne aspect of double jeopardy protects a defendant from being punished multiple times for the same offense" (citing State v. Gocken, 127 Wash.2d 95, 100, 896 P.2d 1267 (1995); State v. Calle, 125 Wash.2d 769, 772, 888 P.2d 155 (1995)). Additionally we held where a defendant's conduct "constitutes just one criminal act, or one `unit of prosecution,'" multiple convictions for that single criminal act violate double jeopardy. Adel, 136 Wash.2d at 632, 965 P.2d 1072. Protection of the individual's right to be free from being twice put in jeopardy for the same offense is fundamental. If the right is diminished for Davis, it is equally diminished for us all.
The first step to define the correct "unit of prosecution" is examination of the statute under which the defendant has been charged or convicted to determine legislative intent.[2]Id. at 635, 965 P.2d 1072.
Davis argues intent is the determining characteristic of that unit of prosecution envisioned by RCW 69.50.401(a)(1)(iii):
(a) Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance.
(1) Any person who violates this subsection with respect to:
. . . .
(iii) any other controlled substance classified in Schedule I, II, or III, is guilty of a crime and upon conviction may be imprisoned for not more than five years, fined not more than ten thousand dollars, or both;....
RCW 69.50.401 (emphasis added).
The State contends since each separate intention to deliver is separately punishable, each separate location of manufacture should *611 likewise be considered a separate unit of prosecution in manufacture cases. However this logic ignores that while each act of delivery requires a separate intent, it is impossible to have multiple intents to "manufacture," at least insofar as that term is legislatively defined as a process. A market analogy best illustrates the inherent difference between delivery and manufacture.
Delivery is, by nature, a finite process. Once goods pass from a buyer to a seller, the transaction is complete. If the seller has yet to dispose of his entire cache of goods, he will undoubtedly seek out a different buyer and begin the process anew.
Manufacturing, however, involves an ongoing course of conduct not necessarily constrained by location. Manufacturing necessarily involves, as the legislature defines it, a "production, preparation, propagation, compounding, conversion, or processing...." RCW 69.50.101(p). In short, it is a process or procedure; and therefore it must be the procedure itself, rather than some aspect of the procedure,[3] which constitutes the true unit of prosecution.
Manufacturing levels may of course increase to satisfy an increased demand; but whether the increase is achieved by hiring new employees, or by increasing the productivity of current employees, or by opening a new plant in a different location, the underlying intent to manufacture is the same. A new intent to manufacture is not created simply because the quantity or means of production may change. It is the fact of manufacture, regardless of quantity and modality, coupled with criminal intent, by which the legislature has defined the crime- and hence it is that overall intent which must ultimately define the unit of prosecution.
The man who maintains a single production facility intends to manufacture his product just as surely as the man who maintains 50 production facilities. One man may grow a single marijuana plant whereas another grows a thousand. But the statute which prohibits the intention to manufacture holds both men equally culpable of but a single crime. Of course, the result would be different if the statute sought to regulate the number of production facilities. In that instance the man who maintains 50 production facilities is 50 times as culpable as his single facility counterpart. However such distinction is noticeably absent from our statute.
If the legislature intended to make differing locations the "unit of prosecution," it could easily have done so.[4] As Justice Frankfurter observed in Bell v. United States, "When Congress has the will it has no difficulty in expressing itwhen it has the will, that is, of defining what it desires to make the unit of prosecution...." 349 U.S. 81, 83, 75 S.Ct. 620, 99 L.Ed. 905 (1955). Correspondingly, "When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." Id. Hence where alternative units of prosecution can reasonably be discerned from the same statutory text, it is the broader unit which is preferred so as to minimize the criminal culpability.
Even though the intent to manufacture is inherently different from the intent to deliver, intent to deliver cases can nevertheless inform the analysis of the appropriate unit of prosecution. For example, in Adel this court examined two intent to deliver cases from the appellate courts which failed to properly apply the unit of prosecution analysis. In State v. Lopez, 79 Wash.App. 755, 904 P.2d 1179 (1995) the defendant faced multiple convictions under an intent to deliver statute. Lopez, 79 Wash.App. at 760, 904 P.2d 1179. Lopez had two separate quantities of cocaine under his dominion and control at the time of his arrest, one located on the floor of his car and the other located on his person. Id. at 759, 904 P.2d 1179. When, in Adel, we applied the proper unit of prosecution analysis to the facts of Lopez, we noted while the defendant may have had two distinct quantities of cocaine from two separate sources, "none of that evidence was relevant to the *612 unit of prosecution for possession with intent to deliver." Adel, 136 Wash.2d at 639, 965 P.2d 1072.
Similarly Davis had two manufacturing operations under his dominion and control at the time of his arrest and now faces multiple convictions for "intent to manufacture." However, just as in Adel, this additional evidence of multiple locations is simply not relevant to multiply the units of prosecution from a single intent to manufacture.
Both Lopez and the instant case can be distinguished from State v. McFadden, 63 Wash.App. 441, 820 P.2d 53 (1991) which was also examined in Adel. McFadden was convicted twice under the possession with intent to deliver statute. McFadden, 63 Wash.App. at 443, 820 P.2d 53. When arrested, McFadden had two distinct quantities of contraband under his dominion and control. Id. Even though the McFadden court failed to properly apply the unit of prosecution analysis, this court in Adel agreed in the result. Adel, 136 Wash.2d at 638, 965 P.2d 1072. However, in so doing, we cautioned our conclusion was "not premised on the fact that the drug was found in two different locations" but rather upon "the showing [of] two separate and distinct intents to deliver...."[5]Id. These cases illustrate how simply finding a drug in multiple locations is insufficient to warrant multiple convictions absent independent indicia of a separate intent.
With regard to intent to manufacture, I conclude our legislature has enacted a statute describing a clear and unambiguous unit of prosecution based on intent, without regard to singularity of location. But even if we were to assume the statute does not clearly reflect this legislatively defined unit of prosecution based on intent, not location, the result would be no different. This is because when a statute is subject to two or more reasonable interpretations, its ambiguity must be resolved in favor of lenity. State v. McGee, 122 Wash.2d 783, 787, 864 P.2d 912 (1993); Bell, 349 U.S. at 83, 75 S.Ct. 620.
While counsel for the State and the Attorney General both contend the statute is unambiguous, they disagree as to what exactly that "unambiguous" unit of prosecution is. Both contend a separate and distinct intention to manufacture will give rise to a separate and distinct basis for conviction, Supplemental Br. of Resp't at 9; Amicus Curiae Br. of Attorney General (Amicus) at 4, but according to the Attorney General the statute "does not make criminal the business of manufacturing a controlled substance, but penalizes successive productions and harvests." Amicus Br. at 6-7. The Attorney General posits "each successive grow and harvest constitute separate and distinct intents to manufacture." Id. at 7.
However the State disagrees with the Attorney General's assessment of what constitutes a "unit of prosecution" under RCW 69.50.401(a). The State contends while the Attorney General's position on the "unit of prosecution" may be reasonable as applied to marijuana, it may ultimately be unreasonable "because it is not necessarily applicable to the manufacturing of other controlled substances."[6] Resp't's Br. in Response to Amicus Br. at 3.
In any event, Bell makes clear "if Congress does not fix the punishment for a federal *613 offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses...." Bell, 349 U.S. at 84, 75 S.Ct. 620. Thus, in light of Bell and Adel, our path is clear: We must favor any reasonable interpretation which characterizes conduct as a single offense rather than multiple ones.
Whether one determines that the statute is unambiguous and there is only one possible unit of prosecution; or whether one determines that the statute is ambiguous, thus implicating the rule of lenity, the fact remains that Mr. Davis's multiple convictions punish him more than once for the same single criminal intent. Such clearly violates the right not to be placed twice in jeopardy as guaranteed by both the state and federal Constitutions.
I therefore respectfully dissent.
NOTES
[1] Davis was charged under RCW 69.50.401(a)(1)(ii). In 1996, the Legislature inserted a new subsection (a)(1)(ii) and redesignated the former subsection (a)(1)(ii) as (a)(1)(iii). Laws 1996, ch. 205, § 2. All references in this opinion will be to the new subsection, RCW 69.50.401(a)(1)(iii).
[2] Davis is no longer incarcerated or under state supervision. The State filed a motion with this Court to dismiss Davis' personal restraint petition on this ground. The motion was denied. As this Court has noted, a "separate conviction, apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored." State v. Calle, 125 Wash.2d 769, 773, 888 P.2d 155 (1995) (quoting Ball v. United States, 470 U.S. 856, 864-65, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985) (emphasis omitted)). "For example, the presence of two convictions on the record may ... result in an increased sentence under a recidivist statute for a future offense. Moreover, the second conviction ... certainly carries the societal stigma accompanying any criminal conviction." Id.
[1] With respect to double jeopardy, the Washington State Constitution offers at least the same scope of protection as the United States Constitution. State v. Adel, 136 Wash.2d 629, 632, 965 P.2d 1072 (1998).
[2] See, e.g., State v. Tili, 139 Wash.2d 107, 985 P.2d 365 (1999) (the legislature clearly defined the unit of prosecution for rape and a new offense is committed upon EACH penetration, no matter how slight).
[3] Such a model was proposed by the Attorney General but rejected by the majority. See Majority at 609.
[4] Till, 139 Wash.2d 107, 985 P.2d 365, is a perfect example of the Washington State Legislature precisely defining a unit of prosecution.
[5] McFadden clearly intended to deliver the drugs on his person to the occupants of the apartment, and he clearly intended to deliver the drugs that were in his van to some other person in future. Adel, 136 Wash.2d at 638, 965 P.2d 1072.
[6] In its reply brief, the State gives examples of how the Attorney General's position on the unit of prosecution might be unreasonable. In particular, the State notes that "`crack' cocaine and methamphetamine are `cooked' in batches, sometimes on a daily basis." Resp't's Br. in Response to Amicus Br. at 3. The State further notes that under the Attorney General's interpretation of the unit of prosecution, "an offender who maintained a small growing operation to provide a continuous marijuana supply for personal use would be subject to multiple units of prosecution." Id. I find this statement somewhat exceptional in light of the State's position in this matter, and can only surmise that the State views the issue in terms of where the manufacturing takes place. Presumably the State asserts that it would not seek multiple counts for "an offender who maintained a small growing operation to provide a continuous marijuana supply for personal use" so long as the offender only had one grow operation. Does this mean the State would seek multiple convictions if the same offender maintained a single plant at both his primary residence and his vacation home?