

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73191-2-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES MASTER OCAIN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: April 18, 2016 |
| | ) | |

BECKER, J. — James O'Cain[1] was convicted of six counts of possession of a controlled substance with intent to deliver. Two of the convictions were for cocaine, two for methamphetamine, and two for heroin. Double jeopardy was not violated when O'Cain's convictions were for possessing three different drugs with the intent to deliver because the convictions were different in law and in fact. Double jeopardy was violated when O'Cain was convicted twice for possessing the same drugs with the intent to deliver. Such convictions constitute one unit of prosecution where there were not two distinct intents to deliver. We remand.

---

[1] In the amended information, the name of the defendant James Master O'Cain was misspelled as James Master Ocain. The proper spelling of his name will be used in the opinion with the exception of the caption, which has not been changed.

FACTS

On October 7, 2013, the King County Sheriff's Office obtained a warrant to search appellant James O'Cain's person, apartment, and two cars. One week later, on October 14, 2013, a team of detectives and a supervising sergeant went to O'Cain's apartment to execute the search warrant.

The detectives searched O'Cain's person. In his jacket pocket, they found, among other items, a plastic sandwich bag containing small rocks of crack cocaine, three small dime bags of methamphetamine imprinted with golden skulls on a black background, 0.3 grams each, and a baggie containing about 16 individually-packaged portions of heroin, 0.14 grams each.

The detectives also searched O'Cain's apartment. In the master bedroom closet, detectives found a locked file cabinet. Inside the file cabinet was a locked safe. Inside the locked safe, detectives found, among other items, a 66.3-gram brick of powder cocaine, a pill container holding a single baggie of 28 grams of methamphetamine, and a 27-gram lump of heroin. The safe also contained two small digital scales and more golden-skull-imprinted baggies.

O'Cain was charged by amended information with six counts of possession of a controlled substance with intent to deliver. Two of these counts charged cocaine, two charged methamphetamine, and two charged heroin, corresponding to the drugs found in O'Cain's jacket pocket and in the locked safe. A jury found O'Cain guilty as charged. O'Cain appeals.

## CHALLENGE TO SEARCH WARRANT

In the detective's affidavit supporting probable cause for the warrant, the detective reported that O'Cain sold drugs to a confidential informant on four separate occasions. Before trial, O'Cain sought to challenge the search warrant. The detective refused to reveal the identity of the confidential informant or any further details regarding O'Cain's alleged drug sales to the informant. O'Cain moved the trial court for an in camera hearing to determine whether there was probable cause to search his person and apartment, pursuant to State v. Casal, 103 Wn.2d 812, 818, 699 P.2d 1234 (1985). The trial court denied his request, stating that the basis for his request was speculative and that he had not demonstrated any inconsistency or the required materiality. O'Cain assigns error to the trial court's refusal to conduct an in camera hearing.

There is a presumption of validity with respect to the affidavit supporting a search warrant. Franks v. Delaware, 438 U.S. 154, 171, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). Before the defendant will be allowed a hearing to challenge the warrant, he must make a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the warrant affidavit. Franks, 438 U.S. at 155-56. When a defendant is faced with a confidential informant, however, he "lacks access to the very information that Franks requires for a threshold showing of falsity." Casal, 103 Wn.2d at 818.

An in camera hearing under Casal can solve this problem. A trial court should exercise its discretion to conduct an in camera examination of the affiant

or confidential informant where a defendant presents information which (1) casts a reasonable doubt on the veracity of material representations made by a search warrant affiant and (2) the challenged statements are the sole basis for probable cause to issue the search warrant. Casal, 103 Wn.2d at 813.

As to the first prong, O'Cain argues that he has met the Casal threshold by submitting repair shop invoices showing that the car the detective said O'Cain was driving was in the repair shop during some of the time period at issue. But the type of car driven by O'Cain was immaterial to the issue of probable cause to search O'Cain's person and apartment, where all the drugs in question were found. No drugs were found in O'Cain's cars. Even if the type of car were material, the repair shop invoices presented by O'Cain do not cast a reasonable doubt on the veracity of the detective's representations regarding these cars. The detective wrote in his affidavit that "within the last week" he saw O'Cain driving his Cadillac at a drug sale to a confidential informant and also saw this same Cadillac parked behind O'Cain's apartment building. The detective's affidavit was dated October 7, 2013, so "within the last week" would be approximately September 30 to October 6, 2013. The repair shop invoices submitted by O'Cain show that this Cadillac was in the shop on the morning of October 1, 2013, and from October 4 through 11, 2013. This leaves several days, including September 30, part of October 1, and October 2 and 3, that the detective could have seen the Cadillac as he alleges. The detective's affidavit, on its face, is not inconsistent with the repair shop invoices submitted by O'Cain.

O'Cain has not cast a reasonable doubt on the veracity of the detective's representations regarding these cars.

O'Cain also argues that he met the Casal threshold by submitting internal investigation documents from the King County Sheriff's Office. The documents showed that the affiant detective had been disciplined in the past for giving a false report regarding his personal vehicle being stolen from his house, and that he had once been reprimanded for referring to a juvenile as "'monkey butt'" or "'monkey boy.'" O'Cain argues that the affiant detective should have disclosed this past disciplinary history in his affidavit. He cites no authority requiring such disclosure. Both of these incidents occurred over 15 years ago. They are unrelated to the information in the search warrant. O'Cain has not specified how the detective's past discipline casts a reasonable doubt on any specific material representation that the detective made in the affidavit.

As to the second prong of the Casal test, the statements challenged by O'Cain are not the sole basis for probable cause to issue the search warrant. The detective's affidavit details how he and other detectives observed O'Cain selling drugs to a confidential informant on four separate occasions. These drug sales, rather than the type of car driven by O'Cain, were the basis for probable cause to issue the search warrant.

## DOUBLE JEOPARDY

On appeal, O'Cain makes two double jeopardy arguments. He first argues that all six of his convictions for possession of a controlled substance with intent to deliver constitute a single "unit of prosecution" based on the to-convict

jury instructions. Alternatively, he argues it is a double jeopardy violation to convict him twice for possessing the same drug at the same time and place. Whether a criminal defendant is placed in double jeopardy in a particular circumstance is a question of law that we review de novo. State v. Womac, 160 Wn.2d 643, 649, 160 P.3d 40 (2007).

The double jeopardy clause of the Fifth Amendment and article I, section 9 of the Washington Constitution protect defendants against multiple punishments for the same offense. To determine if a defendant has been punished multiple times for the same offense, the Washington Supreme Court has traditionally applied the "same evidence" test. State v. Calle, 125 Wn.2d 769, 777, 888 P.2d 155 (1995). The same evidence test mirrors the federal "same elements" standard adopted in Blockburger v. United States, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). Under the same evidence test, double jeopardy is violated if a defendant is convicted of offenses which are the same in law and in fact. Calle, 125 Wn.2d at 777-78. If each offense, as charged, includes elements not included in the other, or requires proof of a fact that the other does not, the offenses are different and multiple convictions can stand. State v. Adel, 136 Wn.2d 629, 633, 965 P.2d 1072 (1998). The same evidence test applies only to a situation where a defendant has multiple convictions for violating distinct or separate statutory provisions. Adel, 136 Wn.2d at 633.

In contrast, where the defendant is convicted of violating one statute multiple times, the "unit of prosecution" test applies. Adel, 136 Wn.2d at 633.

The proper inquiry is what unit of prosecution the legislature has intended as the punishable act under the specific criminal statute. Adel, 136 Wn.2d at 634.

To determine if double jeopardy was violated when O'Cain was convicted of possession with intent to deliver *different* drugs, we apply the same evidence test. See, e.g., State v. O'Neal, 126 Wn. App. 395, 415-17, 109 P.3d 429 (2005) (holding same evidence test applies where defendant was charged with manufacturing two different drugs), aff'd, 159 Wn.2d 500, 150 P.3d 1121 (2007). O'Cain was charged with, and convicted of, unlawful possession with intent to deliver three different drugs: cocaine, heroin, and methamphetamine. O'Cain's convictions for possessing with intent to deliver the three different drugs were different in fact because each required proof of the specific type of drug. The same convictions were also different in law because he was charged with separate violations of the criminal drug statutes. He was charged with possession with intent to deliver methamphetamine in violation of RCW 69.50.401(2)(b). He was charged with possession with intent to deliver cocaine and heroin in violation of RCW 69.50.401(2)(a), which covers controlled substances classified in Schedules I and II. Heroin is defined as a controlled substance in Schedule I, RCW 69.50.204(b)(11). Cocaine is defined as a controlled substance in Schedule II, RCW 69.50.206(b)(4). Thus, the convictions were different in law. Because O'Cain's convictions for possession with intent to deliver cocaine, methamphetamine, and heroin were different in fact and law, double jeopardy was not violated when his convictions were for different drugs.

7

To determine if double jeopardy was violated when O'Cain was convicted of two counts each of possession with intent to deliver the *same* three drugs, we apply the "unit of prosecution" test. See, e.g., Adel, 136 Wn.2d at 634. In Adel, the Washington Supreme Court illustrated the unit of prosecution test by discussing two cases where defendants were charged with two counts of possession with intent to deliver the same drug: State v. McFadden, 63 Wn. App. 441, 820 P.2d 53 (1991), review denied, 119 Wn.2d 1002 (1992), and State v. Lopez, 79 Wn. App. 755, 904 P.2d 1179 (1995).

In McFadden, the defendant went to an apartment to sell cocaine to an informant. Adel, 136 Wn.2d at 637-38. Police raided the apartment and caught McFadden with 5.5 grams of cocaine. Adel, 136 Wn.2d at 638. Police then searched the van McFadden had driven to the apartment and discovered another 83.9 grams of cocaine. Adel, 136 Wn.2d at 638. He was charged and convicted of two counts of possession with intent to deliver. Adel, 136 Wn.2d at 638. The Washington Supreme Court said that two units of prosecution were satisfied. The first unit of prosecution was satisfied by McFadden's possession of drugs in the apartment, which he intended to sell to the people in the apartment. Adel, 136 Wn.2d at 638. The second unit of prosecution was satisfied by McFadden's possession of the drugs in the van with the "obvious intent to deliver them to unknown buyers in the future." Adel, 136 Wn.2d at 638. "The two crimes were premised on the showing that McFadden had two *separate and distinct* intents to deliver drugs in his possession—one intent to sell in the present to the occupants

8

of the apartment and one intent to sell drugs in the future." Adel, 136 Wn.2d at 638.

Adel then contrasted the facts of Lopez. Lopez was arrested in a car during a controlled drug buy with an informant. Adel, 136 Wn.2d at 638. Officers found the cocaine Lopez had just purchased from the informant on the floorboard of the car. They also found cocaine, unrelated to the present deal, on Lopez's person. Adel, 136 Wn.2d at 638-39. "The cocaine on his person was packaged in 14 bindles and appeared to be intended for distribution." Adel, 136 Wn.2d at 639. Lopez was charged with two counts of possession with intent to deliver, one count based on the cocaine he had just purchased from the informant and the other count based on the separate cocaine found on his person. Adel, 136 Wn.2d at 639. Adel held that there was just one unit of prosecution. "Lopez may have had two distinct quantities of cocaine under his dominion and control, and evidence showed the two quantities came from separate sources, but none of that evidence was relevant to the unit of prosecution with intent to deliver. The evidence failed to establish more than one intent to deliver the drugs in the future—there were not two distinct intents to deliver, as there were in McFadden." Adel, 136 Wn.2d at 639.

Implicit in Adel's discussion of Lopez and McFadden is the recognition that conduct demonstrating a "separate and distinct" intent to deliver forms the unit of prosecution for the possession with intent to deliver statute. See also In re Pers. Restraint of Davis, 142 Wn.2d 165, 175, 12 P.3d 603 (2000) (analyzing a charge of possession with intent to manufacture under the same statute and concluding

9

that a "separate and distinct" intent to manufacture drugs forms the unit of prosecution). The issue is thus whether O'Cain had a "separate and distinct" intent to deliver the same drugs when they were found on his person versus in the locked safe.

The State argues that the evidence in O'Cain's case is quite similar to McFadden and was sufficient for the jury to conclude that O'Cain had separate and distinct temporal intents to deliver—present and future—for the drugs found on his person versus in the safe. We disagree. In contrast to McFadden, O'Cain was not in the middle of a drug delivery when he was searched and arrested. He was at home. There is no evidence that he was delivering drugs at the time. Nor was there any evidence of when O'Cain planned to deliver any of the drugs. The facts that some of the drugs were in his jacket pocket and packaged in smaller, more individually-sized packets is not evidence of *when* O'Cain intended to deliver them. The evidence does not show that O'Cain had an intent to deliver the cocaine on his person that was separate and distinct from his intent to deliver the cocaine in the locked safe. The same is true of the methamphetamine and heroin. The evidence failed to establish more than one intent to deliver drugs in the future, as in Lopez. His convictions for possession with intent to deliver the same drugs therefore punish a single unit of prosecution. His second convictions for cocaine, heroin, and methamphetamine violate double jeopardy and must be stricken.

## EFFECT OF TO-CONVICT INSTRUCTIONS

For each of the six counts, the court instructed the jury that to convict O'Cain it must be proved that he "possessed a controlled substance, separate and distinct from conduct in" all the other counts with the intent to deliver each substance. O'Cain makes two arguments regarding the effect of these to-convict instructions.

O'Cain argues that all six of his convictions constitute a single unit of prosecution "under the law of the case" because none of the six to-convict jury instructions name the controlled substance at issue. He has not cited authority indicating that the unit of prosecution analysis depends on how the offenses are defined in the to-convict instructions. Under Adel, the question is what unit of prosecution the legislature intended as the punishable act under the specific criminal statute.

O'Cain also raises a sufficiency of the evidence challenge based on the jury instructions. Evidence is sufficient to support a conviction when, viewed in the light most favorable to the State, a rational trier of fact could have found guilt beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). O'Cain argues that there was insufficient evidence to prove that he engaged in "separate and distinct" conduct for all six counts, as the jury instructions required. He cites State v. Hickman, 135 Wn.2d 97, 954 P.2d 900 (1998). In criminal cases, the State assumes the burden of proving otherwise unnecessary elements of the offense when such added elements are included without objection in the "to convict" instruction. Hickman, 135 Wn.2d at 102.

11

O'Cain argues that a rational trier of fact could not have found that his conduct as to any one count was separate and distinct from his conduct as to any other. He contends the evidence was sufficient to support only one count of possessing a controlled substance with intent to deliver.

After our double jeopardy analysis above, only three of O'Cain's convictions remain at issue, one for each distinct type of drug. The evidence was sufficient to prove that O'Cain engaged in separate and distinct conduct for these three convictions because the evidence showed that he possessed different drugs.

In short, O'Cain fails to demonstrate that any of his convictions fail because of the use of six identical to-convict instructions that do not name the controlled substance.

O'Cain's request for a new trial is denied. The judgment is reversed and remanded to strike the three convictions that violate double jeopardy.

Becker, J.

WE CONCUR:

Trickey, A.C.J.