(138 P.3d 398)
No. 94,254

STATE OF KANSAS, *Appellee*, v. DENNIS W. THOMPSON, *Appellant*.

Opinion filed July 21, 2006.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, of Topeka, for appellant.

*Ty Kaufman*, county attorney, and *Phill Kline*, attorney general, for appellee.

Before HILL, P.J., GREENE and ELLIOTT, JJ.

GREENE, J.: Dennis W. Thompson appeals his multiple drug-related convictions, arguing (i) the evidence was insufficient to support his conviction for manufacture of methamphetamine, (ii) the district court erred in denying his motion to suppress evidence, and (iii) a sentencing error and other errors that we need not discuss in light of our conclusions. We conclude that although there was sufficient evidence to support Thompson's convictions, the dis-

trict court erred in denying his motion to suppress, requiring reversal and remand.

### Factual and Procedural Background

Thompson was stopped within the city limits of McPherson after an officer observed that his vehicle had a faulty headlight. The officer asked for Thompson's license and insurance documentation and determined that there were no wants or warrants for Thompson. Notwithstanding this determination, and consistent with policy, the officer called for a back-up officer to come to the location and told him that he intended to ask Thompson for consent to search the vehicle. The back-up officer was then stationed immediately behind Thompson's vehicle and in front of the first officer's vehicle, which had its emergency lights activated.

The officer then returned the identification documentation to Thompson, issued a verbal warning, and told Thompson to have a good day. Although the officer testified that he then started to walk away but returned within a second or two, the district judge found that there was no disengagement before the officer asked Thompson if he could ask additional questions:

"A careful viewing of the tape reveals that [the officer] did not leave the vicinity of the defendant after telling him to have a good day, but rather, immediately after the defendant had stated thank you to [the officer], he asked the defendant if he could ask him some additional questions. I do not believe there can be any question but that [the officer] did not disengage the defendant before asking his follow up questions."

The additional questioning resulted in Thompson's consent to search his vehicle, and when that search found assorted drug paraphernalia and finished methamphetamine in powder form, Thompson was asked for and he granted authorities written permission to search his garage, where a host of additional manufacturing paraphernalia was found.

Thompson was charged with manufacture of methamphetamine in violation of K.S.A. 65-4159, a severity level 1 felony, possession of ephedrine or pseudoephedrine as a precursor in violation of K.S.A. 65-7006(a), a severity level 1 felony, possession of lithium metal as a precursor in violation of K.S.A. 65-7006(a), a severity

level 1 felony, possession of methamphetamine in violation of
K.S.A. 2005 Supp. 65-4160, a severity level 4 felony, possession of
drug manufacture paraphernalia in violation of K.S.A. 65-
4152(a)(3), a severity level 4 felony, possession of marijuana in
violation of K.S.A. 65-4162(a)(3), a class A misdemeanor, and pos-
session of drug use paraphernalia in violation of K.S.A. 65-
4152(a)(2), a class A misdemeanor.

Prior to trial, Thompson moved to suppress the evidence recov-
ered from the search of his vehicle and garage, arguing that his
consent was not voluntary. After hearing testimony, the district
judge concluded that the motion should be denied, citing state and
federal authorities and stating in material part:

"With the above rules in mind and after applying the 'totality of the circum-
stances' test set out above to the facts of our case, I come to the conclusion that
the encounter between [the officer] and the defendant constituted a consensual
encounter from and after the point in the stop that [the officer] returned the
drivers license to the defendant and told him to have a good day.

"In reaching this decision, I believe it is important that before asking additional
questions: [the officer] had returned the driver's license and other documentation
to the defendant; the defendant was unaware of any other officers at the scene at
the time he agreed to answer further questions; at no time during the stop did
[the officer] use coercive force or methods in dealing with the defendant; [the
officer] never displayed his weapon; never touched the defendant or his vehicle;
and he never exhibited a tone of voice or attitude to the defendant that might
lead a reasonable person to believe he could not leave the scene. Under these
circumstances I am satisfied that the defendant was not seized by [the officer] at
the time of the further questioning and therefore the defendant's Fourth Amend-
ment rights do not come into play."

The jury found Thompson guilty on all counts. Using the severity
level 1 felony, the trial court sentenced him to a controlling term
of 158 months' incarceration on the primary offense of metham-
phetamine manufacture, and the remaining sentences were or-
dered to run concurrently.

Thompson appeals.

### Was There Sufficient Evidence to Support Thompson's Conviction of Manufacturing Methamphetamine?

Thompson argues his conviction for manufacture of metham-

phetamine is not supported by sufficient evidence. When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all of the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Calvin*, 279 Kan. 193, 198, 105 P.3d 710 (2005).

In order to prove the crime of manufacture of methamphetamine, the State must show that the defendant (1) intentionally (2) completed the manufacture of methamphetamine or (3) could have successfully manufactured methamphetamine. *State v. Martens*, 274 Kan. 459, 465-66, 54 P.3d 960 (2002). "[T]he focus of the crime described in 65-4159 is the successful manufacture or potentially successful manufacture of a controlled substance." 274 Kan. at 466.

Despite the numerous methamphetamine manufacture ingredients and items found in his car and garage, Thompson argues the evidence does not show that he either had successfully manufactured methamphetamine or that he was engaged in any process of manufacture that had a degree of likely success. He contends the lack of any methamphetamine residue on the items in his garage, insufficient anhydrous ammonia to manufacture methamphetamine, unopened cold pills, and unaltered lithium batteries show he had neither manufactured nor could have successfully manufactured methamphetamine.

The State cites the following as evidence of guilt: (1) Thompson testified that he knew how to manufacture methamphetamine using the Nazi method and had manufactured methamphetamine on at least three separate occasions before the time of his arrest; (2) finished methamphetamine was found in his car in powder form and dissolved in liquid; (3) lab results showed the liquid solution contained a byproduct of the Nazi manufacture method; and (4) all of the ingredients and utensils necessary to manufacture methamphetamine using the Nazi method were found in Thompson's car and garage except anhydrous ammonia.

Additionally, officers discovered an Aquafina bottle containing a white sludge in Thompson's garage. The sludge was found to con-

sist of sulfuric acid and sodium chloride, consistent with a hydrogen chloride gassing generator. Thompson testified that when he had manufactured methamphetamine in the past, he had always used gassing generators with sulfuric acid and sodium chloride. The presence of the sludge indicated the bottle had previously been used to produce methamphetamine during a stage of the manufacture process. The record indicated gassing generators of this type have no purpose other than as a piece of equipment used in the Nazi method of methamphetamine manufacture. Thus, a reasonable inference was that the gassing generator must have been used in either a successful or potentially successful manufacture of methamphetamine.

Thompson is correct in stating there is some evidence to the contrary, such as the complete absence of any methamphetamine residue on the equipment in his garage. Viewed in the light most favorable to the State, however, we conclude that the evidence as a whole is such that a rational factfinder could have found Thompson guilty of manufacturing methamphetamine beyond a reasonable doubt. Thompson's challenge to the sufficiency of the evidence is rejected.

### Did the District Court Err in Denying Thompson's Motion to Suppress Evidence Found in His Vehicle and Garage?

When reviewing the district court's denial of a defendant's suppression motion, we review the factual underpinnings using a substantial competent evidence standard. The ultimate legal conclusion drawn from such facts, however, is a question of law subject to de novo review. *State v. Jones*, 279 Kan. 71, 73, 106 P.3d 1 (2005). If the facts are undisputed, the question of whether evidence should have been suppressed is a question of law, and we have unlimited review. *State v. Ramirez*, 278 Kan. 402, 404, 100 P.3d 94 (2004). The prosecution has the burden of proving that a search and seizure was lawful. K.S.A. 22-3216(2).

The stopping of a moving vehicle by law enforcement is always considered a seizure. *City of Norton v. Stewart*, 31 Kan. App. 2d 645, 647, 70 P.3d 707 (2003). To lawfully stop a moving vehicle

under *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), and K.S.A. 22-2402(1), a law enforcement officer must " 'have a reasonable and articulable suspicion, based on fact, that the person stopped has committed, is committing, or is about to commit a crime.' [Citation omitted.]" *State v. DeMarco*, 263 Kan. 727, 734, 952 P.2d 1276 (1998). Although Thompson does not challenge the legality of the stop itself, he argues that his detention exceeded the scope and duration required to effectuate the purpose of the stop, and that his consent during that unlawful detention was not voluntary.

In Kansas, a detention may not exceed the scope or duration necessary to effectuate the purpose of the stop. *DeMarco*, 263 Kan. at 734. Our Supreme Court has stated definitively that a routine traffic stop may not be extended for questioning unrelated to the purpose of the stop.

"A law enforcement officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation. When the driver has produced a valid license and proof that he or she is entitled to operate the car, the driver must be allowed to proceed on his or her way, without being subject to further delay by the officer for additional questioning. In order to justify a temporary detention for questioning, the officer must also have reasonable suspicion of illegal transactions in drugs or of any other serious crime." *State v. Mitchell*, 265 Kan. 238, Syl. ¶ 4, 960 P.2d 200 (1998).

In determining the validity of any detention beyond that necessary to effectuate the purpose of the stop, our Supreme Court has provided a two-part test:

" '[F]urther questioning is permissible only if (1) "the encounter between the officer and the driver ceases to be a detention, but becomes consensual, and the driver voluntarily consents to additional questioning," [citation omitted], or (2) during the traffic stop the officer gains a reasonable and articulable suspicion that the driver is engaged in illegal activity.' [Citation omitted.]" *DeMarco*, 263 Kan. at 734.

Here, the State does not argue that the officer gained any reasonable and articulable suspicion of criminal activity during the initial stop, nor does the State argue that the information purportedly known to the officer prior to the stop served to justify any

extended detention. Thus, our focus is whether the detention became consensual.

The State concedes that "there are few, if any, bright line rules" to make this determination. Although the return of identification documentation is a prerequisite to the onset of a consensual encounter, this demonstration standing alone is not always sufficient. See, *e.g.*, *United States v. Elliott*, 107 F.3d 810, 813 (10th Cir. 1997). Moreover, it seems to be established that a law enforcement officer need not advise a lawfully seized person that he or she may leave as a condition of a consensual conversation. *Ohio v. Robinette*, 519 U.S. 33, 136 L. Ed. 2d 347, 117 S. Ct. 417 (1996). Whether a reasonable person would feel free to terminate the encounter and leave the scene must be determined from the totality of the circumstances. *State v. Reason*, 263 Kan. 405, 410, 951 P.2d 538 (1999).

The Ohio Supreme Court did not find the limited holding of the United States Supreme Court in the *Robinette* case controlling on remand. In concluding on remand that the *Robinette* search violated the Fourth Amendment to the United States Constitution, the Ohio court reasoned:

" 'The transition between detention and a consensual exchange can be so seamless that the untrained eye may not notice that it has occurred. The undetectability of that transition may be used by police officers to coerce citizens into answering questions that they need not answer, or to allow a search of a vehicle that they are not legally obligated to allow.' [Citation omitted.]

"When these factors are combined with a police officer's superior position of authority, any reasonable person would have felt compelled to submit to the officer's questioning. While [the officer's] questioning was not expressly coercive, the circumstances surrounding the request to search made the questioning impliedly coercive. . . . From the totality of the circumstances, it appears that Robinette merely submitted to 'a claim of lawful authority' rather than consenting as a voluntary act of free will. Under *Royer*, this is not sufficient to prove voluntary compliance. *Royer*, 460 U.S. at 497, 103 S.Ct. at 1324, 75 L.Ed.2d at 236." *State v. Robinette*, 80 Ohio St. 3d 234, 244-45, 685 N.E.2d 762 (1997).

Where, as here, the district court has expressly found that there was "no disengagement" by the officer between the return of documentation and the additional questioning, we conclude that the undetectability of any transition to a consensual encounter weighs

heavily against an objective conclusion that the driver should believe that he or she was free to end the conversation and simply drive away, which is the touchstone of the proper analysis. See *State v. Hayes*, 35 Kan. App. 2d 616, Syl. ¶ ¶ 7, 8, 9, 133 P.3d 146 (2006); *United States v. Sandoval*, 29 F.3d 537, 540 (10th Cir. 1994).

Additionally, we respect the district court's finding that there was no coercive show of authority here, but recent decisions have found that the continued activation of emergency lights in the patrol vehicle must be considered problematic to any conclusion of consensual encounter. When two officers are standing next to a stopped vehicle, presumably with the emergency lights in the patrol vehicles still activated, no reasonable person would feel free to drive away. See *State v. Morris*, 276 Kan. 11, 22-23, 72 P.3d 570 (2003) (discussing a string of cases dealing with the use of emergency lights as a show of authority). Such authorities have been relied upon recently by our court in noting the continued activation of emergency lights as a factor to be considered in the totality of the circumstances. See, *e.g.*, *Hayes*, 35 Kan. App. 2d 616, Syl. ¶ 9.

Weighing the totality of the circumstances here, we believe the following factors compel the conclusion that Thompson had no objective reason to believe that he was free to end his conversation and drive away after the return of his documentation: (i) The officer expressed a prestop desire to seek consent to search the Thompson vehicle; although this may have little to do with the objective belief of Thompson, the officer's intent to effect a search undoubtedly influenced his actions in the encounter; (ii) the district court found there was no disengagement of the officer after returning the documentation; as noted above, this finding is paramount to our conclusion; (iii) the emergency lights of the patrol vehicle continued to be activated at the time consent was requested; and (iv) the defendant testified that he did not feel free to go when the officer asked about further questioning; although the applicable standard is "a reasonable person," the defendant's actual state of mind is not irrelevant in considering the totality of circumstances. Given the burden of proof on the State, we conclude that Thompson submitted to a claim of lawful authority

rather than consented as a voluntary act. The district court erred in refusing to suppress the fruits of the searches of Thompson's vehicle and garage.

We recognize that the suppression of the evidence here may deal the prosecution a near fatal blow in this case, but our conclusion is based upon sound Fourth Amendment jurisprudence developed in Kansas. At the heart of the Fourth Amendment is a strong requirement of specific justification for any intrusion upon protected personal liberty and security, coupled with a highly developed system of judicial controls to enforce the commands of our Constitution upon the agents of the State. Our court has experienced ever-increasing appeals with nearly identical fact patterns, indicating that there may be a perception in the field that a "bright line rule" merely requires the return of documentation to cleanse additional questioning. This has given rise to what has been characterized as "the Lieutenant Columbo gambit," or the "by the way, can I ask you just one more question?" When evaluating such action under Fourth Amendment jurisprudence and Kansas statutes, the State has the burden to demonstrate that the driver has an objective reason to believe that he or she was free to simply terminate the encounter and drive away. See K.S.A. 22-3216(2); *Hayes*, 35 Kan. App. 2d 616; *Sandoval*, 29 F.3d at 540. Often the balance is between vindicating the officer's hunch and actualizing the liberty interest under the Fourth Amendment; in close cases, the preferred choice between such interests is clearly in favor of the Fourth Amendment rights of the driver.

Reversed and remanded.