Modified Opinion▪
No. 94,254

STATE OF KANSAS, *Appellee*, v. DENNIS W. THOMPSON, *Appellant*.

(200 P.3d 22)

Original opinion filed December 5, 2008. Modified opinion filed January 28, 2009.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Ty Kaufman*, county attorney, argued the cause, and *Phill Kline*, attorney general, was with him on the briefs for appellee.

The opinion of the court was delivered by

LUCKERT, J.: On petition for review, we examine the Court of Appeals' decision reversing Dennis W. Thompson's conviction for possession of lithium metal with the intent to manufacture a controlled substance and vacating his sentences for manufacture of methamphetamine and possession of pseudoephedrine with the intent to manufacture a controlled substance. *State v. Thompson*, 2008 WL 142103 (Kan. App. 2008) (unpublished opinion).

The following issues are subject to our review: (1) Are Thompson's convictions of possession of pseudoephedrine with the intent

to manufacture a controlled substance and possession of lithium metal with the intent to manufacture a controlled substance, both in violation of K.S.A. 65-7006(a), multiplicitous; (2) in sentencing Thompson for his conviction for possession of pseudoephedrine with the intent to manufacture a controlled substance, did the district court err by imposing a sentence in conformity with a severity level 1 drug felony rather than employing the identical offense sentencing doctrine and imposing a sentence for a severity level 4 drug felony which is the sentence for possession of drug paraphernalia with the intent to manufacture; and (3) in sentencing Thompson for his conviction for manufacture of methamphetamine, did the district court err by imposing a sentence in conformity with a severity level 1 drug felony rather than employing the identical offense sentencing doctrine and imposing a sentence for a severity level 4 drug felony which is the sentence for possession of drug paraphernalia with the intent to manufacture?

## FACTS AND PROCEDURAL BACKGROUND

This is the second time this case has been before this court on petition for review. Because the detailed facts are reported in the related previous appellate opinions of this court and the Court of Appeals, we will not extensively narrate the underlying facts and circumstances. See *State v. Thompson*, 36 Kan. App. 2d 151, 138 P.3d 398 (2006), *rev'd and remanded* 284 Kan. 763, 166 P.3d 1015 (2007) (*Thompson I*). Some discussion of the procedural background of the case is necessary to an understanding of the issues in this appeal, however.

Thompson was convicted by a jury of five felonies and two misdemeanors and sentenced to a controlling term of 158 months' imprisonment. His convictions involved the following drug-related offenses: (1) manufacture of methamphetamine in violation of K.S.A. 65-4159, a severity level 1 drug felony; (2) possession of pseudoephedrine with the intent to manufacture a controlled substance in violation of K.S.A. 65-7006(a), a severity level 1 drug felony; (3) possession of lithium metal with the intent to manufacture a controlled substance in violation of K.S.A. 65-7006(a), a severity level 1 drug felony; (4) possession of methamphetamine in

violation of K.S.A. 2007 Supp. 65-4160, a severity level 4 drug felony; (5) possession of drug manufacture paraphernalia in violation of K.S.A. 65-4152(a)(3), a severity level 4 drug felony; (6) possession of marijuana in violation of K.S.A. 65-4162(a)(3), a class A misdemeanor; and (7) possession of drug use paraphernalia in violation of K.S.A. 65-4152(a)(2), a class A misdemeanor.

Before trial, Thompson had filed a suppression motion and a motion in which he argued the various charges were multiplicitous. The district court had denied Thompson's requests for relief. Consequently, the district court sentenced Thompson on the seven counts and imposed the sentence corresponding to that crime's severity level.

On appeal from the jury verdict and district court rulings, Thompson raised a number of issues before the Court of Appeals. He challenged the district court's denial of his motion to suppress the evidence recovered from the search of Thompson's vehicle and garage. In addition, he challenged his multiple drug-related convictions based upon sufficiency of the evidence, evidentiary error, and multiplicity. Finally, he challenged his sentences. The Court of Appeals rejected Thompson's argument regarding sufficiency of the evidence but reversed his convictions after holding that the district court erred in denying Thompson's motion to suppress. As a result of this ruling, the Court of Appeals did not decide the other issues.

This court subsequently granted the State's petition for review on the single suppression issue and denied Thompson's cross-petition for review in which he sought review of the Court of Appeals' ruling that there was sufficient evidence to support his conviction of manufacture of methamphetamine. In *Thompson I*, we reversed the portion of the Court of Appeals' decision regarding the suppression of evidence and remanded the case to the Court of Appeals for consideration of the issues not addressed in the panel's opinion.

On remand, in *State v. Thompson*, 2008 WL 142103 (*Thompson II*), the Court of Appeals once again concluded sufficient evidence supported Thompson's conviction of manufacture of methamphetamine and also, for the first time, addressed and rebuffed Thompson's arguments regarding evidentiary error. In addition,

applying *State v. Schoonover*, 281 Kan. 453, 133 P.3d 48 (2006), which was filed after Thompson's briefs were submitted, the Court of Appeals rejected most of Thompson's multiplicity arguments.

But the Court of Appeals agreed with three of Thompson's arguments. First, regarding Thompson's convictions, the panel concluded his conviction for possession of lithium metal with the intent to manufacture is multiplicitous with his conviction for possession of pseudoephedrine with the intent to manufacture a controlled substance. Based upon this, the panel reversed Thompson's conviction for possession of lithium metal with the intent to manufacture a con trolled substance, a severity level 1 drug felony. The other two successful arguments related to the application of the identical offense sentencing doctrine. Applying that doctrine, the panel reversed Thompson's two remaining severity level 1 drug felony convictions—manufacture of methamphetamine and possession of pseudoephedrine with the intent to manufacture a controlled substance—and remanded for new sentences commensurate with severity level 4 drug felony offenses. *Thompson II*, 2008 WL 142103, at *4-5.

Both parties filed petitions for review. We granted the State's petition for review in which it sought review of the multiplicity and sentencing issues on which the Court of Appeals had ruled in favor of Thompson. We denied Thompson's cross-petition for review in which he sought (1) review of the holdings relating to the admission of certain trial testimony, and (2) reversal of his conviction of manufacture of methamphetamine based upon sufficiency of the evidence. This court has jurisdiction under K.S.A. 20-3018(b).

## POSSESSION OF PRECURSORS

The State charged Thompson with two violations of K.S.A. 65-7006(a), one for posses sion of pseudoephedrine with the intent to manufacture methamphetamine and one for possession of lithium metal with the intent to manufacture methamphetamine.

K.S.A. 65-7006(a) provides:

"(a) It shall be unlawful for any person to possess ephedrine, pseudoephedrine, red phosphorus, lithium metal, sodium metal, iodine, anhydrous ammonia, pressurized ammonia or phenylpropanolamine, or their salts, isomers or salts of isomers with intent to use the product to manufacture a controlled substance."

Although a current violation of K.S.A. 65-7006(a) is a severity level 2 drug felony, the version of the statute in effect at the time Thompson committed these offenses, K.S.A. 65-7006(a) (Furse 2002), ranked a violation of the provision as a severity level 1 drug felony.

The State argues the two severity level 1 drug offenses under K.S.A. 65-7006(a) should be affirmed because the legislature, by listing individual substances in the statute without inserting any limiting language, indicated its intent to permit a separate prosecution for each substance, meaning Thompson could be convicted in separate counts for possession of pseudoephedrine and for possession of lithium metal. The district court accepted this view.

In reviewing the district court's determination, the Court of Appeals, applying the controlling authority of *Schoonover*, disagreed. The panel construed K.S.A. 65-7006(a) to require a single unit of prosecution for multiple items possessed within the statutory list. In other words, an accused cannot be separately prosecuted for the possession of each of the items listed in the statute. See *Thompson II*, 2008 WL 142103, at *5. Consequently, the Court of Appeals held that Thompson's convictions of possessing two of the prohibited items are multiplicitous.

In its petition for review, the State contends that the Court of Appeals erred in its statutory interpretation of K.S.A. 65-7006(a).

*STANDARD OF REVIEW/STATUTORY CONSTRUCTION*

Questions involving multiplicity and statutory interpretation are questions of law subject to unlimited appellate review. *State v. Harris*, 284 Kan. 560, Syl. ¶ 3, 162 P.3d 28 (2007); *State v. Fisher*, 283 Kan. 272, 312, 154 P.3d 455 (2007); *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006).

When reviewing a statute, an appellate court first attempts to give effect to the intent of the legislature as expressed. When the language of a statute is plain and unambiguous, the court must give effect to that language, rather than determine what the law should or should not be. The court will not speculate as to legislative intent or read such a statute to add something not readily found in it. *Harris*, 284 Kan. at 572; *State v. Post*, 279 Kan. 664, 666, 112 P.3d 116 (2005). The court will not resort to canons of statutory con-

struction or consult legislative history if the language of a statute is clear and unambiguous as written. See *State v. Robinson*, 281 Kan. 538, 539-40, 132 P.3d 934 (2006).

### DOUBLE JEOPARDY ANALYSIS

This court has consistently stated that multiplicity is the charging of a single offense in several counts of a complaint or information. *State v. Scott*, 286 Kan. 54, Syl. ¶ 4, 183 P.3d 801 (2008); 284 Kan. 560, Syl. ¶ 1; see K.S.A. 21-3107(1). The principal danger of multiplicity is that it creates the potential for multiple punishments for a single offense, which is prohibited by the Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights. *Fisher*, 283 Kan. at 312.

In *Schoonover*, this court announced an analytical framework for determining whether convictions subject a defendant to double jeopardy. "[T]he overarching inquiry is whether the convictions are for the same offense." 281 Kan. at 496. This inquiry is broken into two components, both of which must be met for there to be a double jeopardy violation: (1) Do the convictions arise from the same conduct and, if so, (2) by statutory definition, are there two offenses or only one? 281 Kan. at 496.

With regard to the first prong of the double jeopardy analysis, if the convictions are not based upon the same conduct, the analysis ends. 281 Kan. at 496-97. The *Schoonover* court provided some factors to consider if the conduct is unitary, *i.e.*, the same:

"(1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct." 281 Kan. 453, Syl. ¶ 16.

With regard to the second prong of the double jeopardy analysis—whether the statutory provisions provide for two offenses or only one—the test to be applied depends on whether the convictions arise from a single statute or from multiple statutes. 281 Kan. at 497-98. If the convictions are based upon different statutes, the convictions are multiplicitous only when the statutes upon which the convictions are based contain an identity of elements.

As in Thompson's case, however, when a double jeopardy issue arises from convictions for multiple violations of a single statute, this court applies the "unit of prosecution" test. 281 Kan. at 471-72. In a unit of prosecution case, the court asks how the legislature has defined the scope of conduct composing one violation of a statute. Under this test, the statutory definition of the crime determines what the legislature intended as the allowable unit of prosecution. There can be only one conviction for each unit of prosecution. 281 Kan. at 497-98.

### (1) *Unitary conduct*

Applying the first prong of the double jeopardy test, the Court of Appeals concluded there was unitary conduct in Thompson's possession of pseudoephedrine and lithium metal in that lithium batteries and pseudoephedrine were found in Thompson's car at the same time and location, and there was no intervening event or fresh impulse apparent from the record. *Thompson II*, 2008 WL 142103, at *4.

A similar conclusion was drawn by this court in *Schoonover*, where the defendant was arrested inside a vehicle described as a "rolling meth lab." 281 Kan. at 498. Although the ingredients and drug manufacturing paraphernalia in Schoonover's vehicle had presumably been gathered from various locations, and some of the manufacturing process had likely occurred in a location other than the vehicle, this court determined: "[T]hese actions are part of one transaction of manufacturing methamphetamine and do not lead to a conclusion there were separate events." 281 Kan. at 499-500. In addition, the only evidence regarding time was an opinion that a cooler containing anhydrous ammonia was probably there no more than 6 hours. Moreover, there was no evidence of an intervening event in the methamphetamine production cycle and no evidence of a fresh criminal impulse of starting a new manufacturing process. The *Schoonover* court concluded, therefore, that the convictions arose from unitary conduct. 281 Kan. at 500.

Here, although Thompson's vehicle, unlike Schoonover's vehicle, was not a rolling meth lab (it was alleged, instead, that there was a working meth lab in Thompson's garage), Thompson's ac-

tions—possessing lithium metal and pseudoephedrine with intent to manufacture a controlled substance—were part of one transaction of manufacturing methamphetamine and do not lead to a conclusion that there were separate events. Law enforcement officers found methamphetamine in Thompson's vehicle in powder form and dissolved in liquid, and lab results showed the liquid solution contained a byproduct of the "Nazi" manufacture method. When an officer found the lithium batteries and pills in Thompson's vehicle and asked him where the items came from, Thompson said they came from his garage. With this information and Thompson's consent, law enforcement officers searched Thompson's garage and found various manufacturing paraphernalia, such as an electronic scale, solvents, isopropyl alcohol, plastic bottles, anhydrous ammonia, and tubing. The record contains no evidence of an intervening event or fresh impulse.

The Court of Appeals correctly determined that Thompson's convictions of possession of pseudoephedrine with the intent to manufacture methamphetamine and possession of lithium metal with the intent to manufacture methamphetamine arose from unitary conduct.

### (2) *Unit of prosecution test*

Because Thompson's charges arose out of the same conduct, we continue to the second prong of the double jeopardy test, determining whether there are two offenses or only one. In this case, because the two convictions in question arise from two violations of a single statute rather than multiple statutes, the unit of prosecution test applies. We must determine whether the legislature intended Thompson's conduct to constitute "only one violation of the statute or to satisfy the definition of the statute several times over." *Harris*, 284 Kan. at 572-73.

In examining the statutory language that makes it unlawful to possess any one of the listed items "with intent to use the product to manufacture a controlled substance," the Court of Appeals posed several questions before coming to its determination regarding legislative intent:

"Did the legislature intend that upon discovering a complete methamphetamine lab with the presence of all the items listed in the statute, the person possessing the lab could be charged with 10 or more violations of K.S.A. 65-7006? If multiples of each item are found, was the intent that there should be virtually no end to the number of violations to be charged? And given that the statute specifies that each violation is a severity level 1 felony, did the legislature intend that the potential maximum penalty, if imposed consecutively for each offense, could potentially exceed that for the most severe and heinous crime within our criminal code? We simply do not believe this is a likely legislative intent." *Thompson II*, 2008 WL 142103, at *5.

The Court of Appeals reasoned, instead, that the legislature provided a rather exhaustive list of items typically used in the manufacture of methamphetamine "to facilitate relative ease in prosecuting anyone possessing *any* of these items on a 'stand alone' basis." *Thompson II*, 2008 WL 142103, at *5. This determination, according to the panel, is consistent with the penalty provided by the legislature—a penalty for a severity level 1 drug felony. And the panel observed that although the legislature could have provided that each item possessed within the list constitutes a separate violation of the statute, it did not do so. *Cf.* K.S.A. 65-4141(a) ("Each separate use of a communication facility may be charged as a separate offense under this subsection.").

The State disagrees with the Court of Appeals' interpretation of the legislature's definition of the scope of conduct in K.S.A. 65-7006(a) and contends that if the legislature intended to apply a one-time "cumulative prohibition" on the enumerated items, it could have shown this intent by using limiting language in the statute, such as "or a combination of any of the products." But no limiting language was placed in the statute.

Moreover, the State points out that the Uniform Controlled Substances Act, K.S.A. 65-4101 *et seq.*, contains statutes in which separate prohibited criminal acts are listed under a single statute, yet, in the State's view, the legislature unquestionably intended to permit the prosecution of certain multiple offenses. The State points to K.S.A. 2007 Supp. 65-4160(a), in which the legislature makes it "unlawful for any person to possess or have under such person's control any opiates, opium or narcotic drugs, or any stimulant designated in subsection (d)(1), (d)(3), or (f)(1) of K.S.A. 65-4107."

The same statute also provides that "[a]ny person who violates this subsection shall be guilty of a drug severity level 4 felony." K.S.A. 2007 Supp. 65-4160(a); see also K.S.A. 2007 Supp. 65-4161 (unlawful acts relating to sale or distribution of opiates, opium, narcotic drugs, or designated stimulants; acts within 1,000 feet of school property).

The State hypothesizes for example that, under K.S.A. 2007 Supp. 65-4160(a), if an individual possesses the opiate heroin, the narcotic cocaine, and the stimulant methamphetamine, the legislature intends an allowable unit of prosecution for each of those multiple offenses. No one would suggest, according to the State, that an individual found in possession of all three drugs could be prosecuted for only one felony because three violations fall under the same statute. The State contends that the same logic would apply to the items listed under K.S.A. 65-7006(a).

The State's argument ignores a serious question of whether possession of the opiate heroin, the narcotic cocaine, and the stimulant methamphetamine would be considered unitary; ordinarily, for example, the possession of heroin would be prompted by a separate impulse from possession of cocaine or possession of methamphetamine. As such, under K.S.A. 2007 Supp. 65-4160(a), it is very likely a double jeopardy analysis would end with a determination the conduct was not unitary. In contrast, a defendant might gather several items listed in K.S.A. 65-7006(a) when motivated by a single impulse, *i.e.,* a unitary intent to conduct one manufacturing process.

In addition, the State's hypothetical is not analogous in another aspect: the gravamen of the offense in K.S.A. 2007 Supp. 65-4160(a) is clearly possession of each specified controlled substance in the statute—heroin, cocaine, and methamphetamine—and the legislature criminalized the possession or control of "any" of those drugs. But the statute in our case, K.S.A. 65-7006(a), does not contain the word "any." Moreover, mere possession is legal; it is only when the possession of one or more of the specified items is accompanied by the intent to manufacture methamphetamine that the action becomes illegal.

Yet, as is evident from the Court of Appeals' discussion and from the State's arguments in its petition for review, the unit of prose-

cution has not been defined in the plain statutory language and the legislature's intent in K.S.A. 65-7006(a) is unclear.

In such a situation, the rule of lenity applies. *State v. Pham*, 281 Kan. 1227, 1248, 136 P.3d 919 (2006) ("Where the legislative intent is unclear, we apply the rule of lenity."); *Schoonover*, 281 Kan. at 470 ("[T]he application of the rule of lenity to single-statute unit of prosecution cases is well established."). Under the rule of lenity, statutory silence and ambiguity regarding the unit of prosecution is construed in favor of the defendant.

This court in *Schoonover* cited the example of *Bell v. United States*, 349 U.S. 81, 99 L. Ed. 905, 75 S. Ct. 620 (1955), which analyzed whether the Mann Act was violated once or twice by the transportation of two women across state lines for immoral purposes. The United States Supreme Court held there was only one violation because Congress had failed " 'clearly and without ambiguity' " to "provide for . . . two convictions for the act." *Schoonover*, 281 Kan. at 472 (citing 349 U.S. at 84). " 'When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity.' " 281 Kan. at 472 (citing 349 U.S. at 83). Thus, the rule of lenity dictates that we resolve any uncertainty against turning a single transaction into multiple offenses. See Project, *Twenty-Ninth Annual Review of Criminal Procedure*, 88 Geo. L.J. 879, 1293 (2000) ("when the government seeks to prove that a single act or occurrence results in multiple violations of the same statute, the rule of lenity requires only one punishment unless legislative intent to impose multiple punishments is shown"); Solan, *Law, Language, and Lenity*, 40 Wm. & Mary L. Rev. 57 (1998) (tracing the evolution of the rule of lenity). Moreover, as this court stated in *Schoonover*: "The determination of the appropriate unit of prosecution is not necessarily dependent upon whether there is a single physical action or a single victim. Rather the key is the nature of the conduct proscribed." 281 Kan. at 472.

The State argues the single unit of conduct proscribed by K.S.A 65-7006(a) is possessing multiple packets of the *same* controlled substance. This interpretation is not expressed in the plain language of K.S.A. 65-7006(a). Rather, the statute proscribes posses-

sion of products with the intent to manufacture, and that intent to manufacture forms the unit of prosecution.

This view of a very similar statute was recently adopted by the Washington Court of Appeals. In *State v. Gaworski*, 138 Wash. App. 141, 156 P.3d 288 (2007), the defendant was convicted of two violations of Wash. Rev. Code § 69.50.440, one for possession of pseudoephedrine with the intent to manufacture methamphetamine and one for possession of anhydrous ammonia with the intent to manufacture methamphetamine. The defendant argued on appeal that where an accused possesses the precursors at the same time and location and has a single manufacturing operation, the State cannot separately prosecute each possession. The State countered that the legislature, by listing individual substances in the statute, indicated its intent to permit a separate prosecution for each substance.

Wash. Rev. Code § 69.50.440 provided:

"It is unlawful for any person to possess ephedrine or any of its salts or isomers or salts of isomers, pseudoephedrine or any of its salts or isomers or salts of isomers, pressurized ammonia gas, or pressurized ammonia gas solution with intent to manufacture methamphetamine, including its salts, isomers, and salts of isomers."

The *Gaworski* court first observed that under the plain language of the statute, a crime occurs (1) whenever a person possesses any one of the listed ingredients (2) with the intent to manufacture methamphetamine. The court then stated: "Had the legislature banned simple possession of these ingredients, regardless of intent, there would be no question but that separate prosecutions were authorized for each substance." *Gaworski*, 138 Wash. App. at 149.

Looking to prior Washington appellate cases involving the application of the unit of prosecution test in the context of possession of controlled substances with the intent to manufacture or deliver, the *Gaworski* court noted that in those cases, "the unit of prosecution turned on the nature of the defendant's intent." 138 Wash. App. at 149. The *Gaworski* court cited *Personal Restraint of Davis*, 142 Wash. 2d 165, 12 P.3d 603 (2000), where Davis' two " 'wholly self-contained' " marijuana grow operations in different towns showed evidence of two separate intents to manufacture marijuana,

and the Washington Supreme Court held that Davis was properly convicted of two counts of possession of marijuana with the intent to deliver. *Gaworski*, 138 Wash. App. at 150 (citing *Davis*, 142 Wash. 2d at 176).

Another example cited by the *Gaworski* court was *State v. McFadden*, 63 Wash. App. 441, 820 P.2d 53 (1991), where the defendant brought 5.5 grams of cocaine into an apartment during a buy-bust operation with an immediate intent to deliver, and this was found to be distinct from the defendant's intent for future delivery of 83.9 grams of cocaine remaining outside in his van. The *McFadden* court held those two convictions did not violate double jeopardy. *Gaworski*, 138 Wash. App. at 150 (citing *State v. Adel*, 136 Wash. 2d 629, 965 P.2d 1072 [1998] [discussing *McFadden*, 63 Wash. App. at 452]).

The *Gaworski* court contrasted *Davis* and *McFadden* with *State v. Lopez*, 79 Wash. App. 755, 904 P.2d 1179 (1995), where law enforcement officers, arresting the defendant in his car, found cocaine on the floorboard and on the defendant's person. The *Lopez* court held the evidence showed only one future intent to deliver cocaine, and the defendant could be convicted of only one count of possession with the intent to deliver. *Gaworski*, 138 Wash. App. at 150 (citing *Adel*, 136 Wash. 2d at 638-39 [discussing *Lopez*, 79 Wash. App. at 762]).

Focusing on its own case, the *Gaworski* court then emphasized that possession of precursor chemicals is not illegal unless the possession is joined with the intent to manufacture methamphetamine. The court further observed that the defendant had only one manufacturing operation. Because Wash. Rev. Code § 69.50.440 failed to state whether possession of each and every item in the statute for a single manufacturing operation could be prosecuted separately, the *Gaworski* court applied the rule of lenity and held there was a single unit of prosecution in the statute. Consequently, the defendant's two convictions for possession of precursor chemicals violated double jeopardy. 138 Wash. App. at 150.

As in *Gaworski*, in enacting K.S.A. 65-7006(a), the Kansas Legislature failed to state whether possession of each item in the statute for a single manufacturing operation may be prosecuted sep-

arately. Clearly, however, under the plain language of K.S.A. 65-7006(a), a crime occurs (1) whenever a person possesses any one of the listed items (2) with the intent to manufacture a controlled substance. It is the combination of these elements that forms the crime, and a unitary intent to manufacture forms the unit of prosecution. Consequently, the nature of the conduct proscribed in K.S.A. 65-7006(a), the required intent, and the rule of lenity require the conclusion that only a single unit of prosecution exists in K.S.A. 65-7006(a) if a defendant's conduct is unitary, even if the defendant possesses several of the items listed in the statute. In such a circumstance, a defendant cannot be sentenced for possessing each listed substance.

Applying that rule in this case, because Thompson's conduct and intent to manufacture were unitary, his convictions of possession of a lithium metal and his conviction of possession of pseudoephedrine, both with the intent to manufacture methamphetamine, subject Thompson to double jeopardy. The Court of Appeals correctly determined that one of these convictions must be reversed. The panel reversed Thompson's conviction of possession of lithium metal with intent to manufacture a controlled substance, and we affirm this holding.

### SENTENCE FOR POSSESSION OF PSEUDOEPHEDRINE

Thompson's conviction of possession of pseudoephedrine with the intent to manufacture methamphetamine in violation of K.S.A. 65-7006(a) was a severity level 1 drug felony, and the sentencing court imposed a sentence accordingly. On appeal, Thompson challenged the severity level applied for purposes of sentencing. The Court of Appeals, on remand, considered this issue and determined that Thompson's sentence for possession of pseudoephedrine with the intent to manufacture a controlled substance must be vacated, and, under the identical sentencing offense doctrine and *State v. Campbell*, 279 Kan. 1, 106 P.3d 1129 (2005), Thompson must be resentenced for this conviction in accordance with a severity level 4 drug felony, the sentence that would apply for a conviction of possession of drug paraphernalia with the intent to manufacture. *Thompson II*, 2008 WL 142103, at *5-6.

Even though *Campbell* resolved this issue, the State argues that in *Schoonover* this court "effectively overruled" *Campbell*. Accordingly, the State suggests the Court of Appeals erred in relying on *Campbell* and urges this court to find that the district court correctly imposed a severity level 1 drug felony sentence.

*STANDARD OF REVIEW*

Interpretation of a statute is a question of law over which an appellate court has unlimited review. *State v. Drayton*, 285 Kan. 689, 714, 175 P.3d 861 (2008); *State v. McCurry*, 279 Kan. 118, 121, 105 P.3d 1247 (2005).

*KANSAS' IDENTICAL OFFENSE SENTENCING DOCTRINE*

In *Campbell*, this court applied the identical offense sentencing doctrine analysis from *State v. McAdam*, 277 Kan. 136, 144, 83 P.3d 161 (2004), to conclude that possession of drug paraphernalia with the intent to manufacture methamphetamine in violation of K.S.A. 65-4152(a)(3) was identical to possession of ephedrine or pseudoephedrine with the intent to produce a controlled substance in violation of K.S.A. 65-7006(a). The *Campbell* court stated:

"In the circumstances of this case, the elements of the offense were knowingly possessing ephedrine or pseudoephedrine with the intent to use it to manufacture a controlled substance. The elements were the same whether Campbell had been charged under the ephedrine statute or the drug paraphernalia statute." 279 Kan. at 16.

Because the elements of the statutes were identical to the extent of the overlap between the two provisions, Campbell was entitled to receive the benefit of the identical offense sentencing doctrine. In other words, he was entitled to be sentenced under the lesser penalty provision for violation of K.S.A. 65-4152(a)(3), a severity level 4 drug felony. 279 Kan. at 16-17.

In arguing this ruling was effectively overruled in *Schoonover,* the State emphasizes our statements in *Schoonover* that K.S.A. 65-4152(a)(3) and K.S.A. 65-7006(a) were not identical and prosecution under both provisions did not violate double jeopardy. Specifically, the State argues: "Since the statutes are not identical but overlapping, *Campbell* is no longer controlling and it becomes a legal imperative that *U.S. v. Batchelder*, 442 U.S. 114, 60 L. Ed.

2d 755, 99 S. Ct. 2198 (1979) governs the instant case and that lenity does not apply."

This argument ignores *Schoonover's* discussion of *Campbell* and mixes the structure of a double jeopardy analysis with the due process analysis applied under the Kansas identical offense sentencing doctrine. As we explained in *State v. Fanning*, 281 Kan. 1176, 135 P.3d 1067 (2006):

"To distinguish between the analytical approach used in these cases, it is important to note that *McAdam* and *Campbell* involved a sentencing issue, while *Schoonover* and *Patten* [280 Kan. 385, 122 P.3d 350 (2005),] involved a multiplicity issue. McAdam and Campbell challenged their sentences, not the underlying convictions. Schoonover and Patten challenged their convictions. Because of this distinction in issues, we are not required to apply the same analytical framework to both types of cases." 281 Kan. at 1182.

Even though *Schoonover* and *Campbell* utilize different analytical frameworks, both cases discuss the United States Supreme Court's decision in *Batchelder*, 442 U.S. 114, on which the State relies in this case. In *Batchelder*, the Court was considering overlapping provisions of the Omnibus Crime Control and Safe Streets Act of 1968. See 18 U.S.C. § 922(h) (2006); 18 U.S.C. App. § 1202(a) (1976) (repealed 1986). One provision criminalized possession of a gun by a person who was a convicted felon, was an illegal alien, had renounced citizenship, had been adjudicated mentally ill, or was a dishonorably discharged serviceman. 18 U.S.C. App. § 1202(a). The other provision criminalized possession of a gun by a convicted felon, fugitive from justice, unlawful user of narcotics, or a person adjudicated as "mental[ly] defective." 18 U.S.C. § 922(h); 18 U.S.C. § 924(a). One provision was a felony, the other a misdemeanor. Batchelder was a convicted felon who possessed a gun and, thus, could have been convicted under either provision.

The Seventh Circuit Court of Appeals found the overlapping provisions to be identical to the extent of the overlap regarding convicted felons and reversed the sentence because the trial court had imposed the harsher penalty. In part, the Seventh Circuit reasoned, the "prosecutor's power to select one of two statutes that are identical except for their penalty provisions" implicated "important constitutional protections." *United States v. Batchelder*,

581 F.2d 626, 631 (7th Cir. 1978), *rev'd* 442 U.S. 114, 99 S. Ct. 2198, 60 L. Ed. 2d 755 (1979).

The United States Supreme Court reversed, rejecting the prosecutorial discretion justification and all of the other rationales on which the Seventh Circuit's decision was based. The Court adopted an analytical framework for an examination of duplicative statutes when challenged on equal protection and due process grounds. The analysis requires testing: (1) whether the statutes violated due process for lack of notice and vagueness; (2) whether the existence of the duplicative statutes implicated due process and equal protection interests in avoiding excessive prosecutorial discretion and in obtaining equal justice; and (3) whether such prosecutorial discretion amounts to an impermissible delegation of legislative authority. Regarding the second consideration and the Seventh Circuit's concern regarding unfettered prosecutorial discretion, the Court stated:

"Contrary to the Court of Appeals' assertions, a prosecutor's discretion to choose between §§ 922(h) and 1202(a) is not 'unfettered.' Selectivity in the enforcement of criminal laws is, of course, subject to constitutional constraints. And a decision to proceed under § 922(h) does not empower the Government to predetermine ultimate criminal sanctions. Rather, it merely enables the sentencing judge to impose a longer prison sentence than § 1202(a) would permit and precludes him from imposing the greater fine authorized by § 1202(a). More importantly, there is no appreciable difference between the discretion a prosecutor exercises when deciding whether to charge under one of two statutes with different elements and the discretion he exercises when choosing one of two statutes with identical elements. In the former situation, once he determines that the proof will support a conviction under either statute, his decision is indistinguishable from the one he faces in the latter context. The prosecutor may be influenced by the penalties available upon conviction, but this fact, standing alone, does not give rise to a violation of the Equal Protection or Due Process Clause." 442 U.S. at 124-25.

Kansas decisions have not followed *Batchelder*, however. In 1987, 8 years after the Supreme Court's decision in *Batchelder*, this court took the view that had been expressed by the Seventh Circuit Court of Appeals and held that where two statutes criminalize the same conduct and the overlapping provisions contain "identical offenses, a defendant can only be sentenced under the lesser penalty." *State v. Clements*, 241 Kan. 77, 83, 734 P.2d 1096 (1987). The court explained the rationale of its decision by stating:

"[T]he decision as to which penalty to seek cannot be a matter of prosecutorial whimsy in charging." 241 Kan. at 83. Two years later, the court reaffirmed the position in *State v. Nunn*, 244 Kan. 207, 229, 768 P.2d 268 (1989).

Neither the *Clements* nor the *Nunn* courts cited *Batchelder*, but clearly the rationale and the holding of the decisions departed from the United States Supreme Court's decision. Kansas is not the only state to have taken this view. *E.g., People v. Estrada*, 198 Colo. 188, 191-92, 601 P.2d 619 (1979) (Supreme Court's reasoning in *Batchelder* is not persuasive; "We find a penalty scheme that provides widely divergent sentences for similar conduct and intent to be irrational."); see 4 LaFave, Criminal Procedure § 13.7(a), pp. 95-99 (2d ed. 1999) (suggesting that state courts need not retreat from pre-*Batchelder* decisions holding unconstitutional those statutes which provide different punishment for exactly the same conduct).

Sixteen years after the decision in *Clements*, this court was called upon to apply the identical offense sentencing doctrine in the context of a drug offense in *State v. McAdam*, 277 Kan. 136, 83 P.3d 161 (2004), and then again in *Campbell*, 279 Kan. 1, also in 2004. The statutes at issue in *McAdam*, K.S.A. 65-4159(a) and K.S.A. 65-4161(a), were enacted in 1990 and 1994, respectively. The statutes at issue in *Campbell* and in the present case, K.S.A. 65-4152(a) and K.S.A. 65-7006, were enacted in 1981 and 1999, respectively. Hence, Kansas' identical offense sentencing doctrine had been in place for decades before the legislature acted, presumably with knowledge of the law. See *In re Adoption of G.L.V.*, 286 Kan. 1034, 190 P.3d 245 (2008) (Courts presume " 'the legislature had and acted with full knowledge and information as to the subject matter of the statute, as to prior and existing law and legislation on the subject of the statute and as to the judicial decisions with respect to such prior and existing law and legislation. [Citations omitted.]' ").

The *Campbell* court discussed *Batchelder* and quoted extensively from a treatise in which the authors described the reasoning of *Batchelder* as "wanting." 279 Kan. at 13-15 (quoting 4 LaFave, Criminal Procedure § 13.7[a], p. 99). After discussing *Batchelder*, the *Campbell* court reaffirmed the long-standing Kansas doctrine that a defendant can only be sentenced to the lesser of two sen-

tences provided for in overlapping provisions with identical elements. 279 Kan. at 16-17. *McAdam* and *Campbell* have been applied in several subsequent cases. *E.g., State v. Cooper*, 285 Kan. 964, 179 P.3d 439 (2008); *State v. Fanning*, 281 Kan. 1176, 135 P.3d 1067 (2006); *State v. Stevens*, 278 Kan. 441, 101 P.3d 1190 (2004).

In comparison to our departure from United States Supreme Court precedent on state law grounds in the due process and equal protection area of sentencing under duplicative provisions, we adopted the Court's double jeopardy analysis in *Schoonover*. In doing so, we again discussed *Batchelder*'s categorization of overlapping provisions. *Schoonover*, 281 Kan. at 503.

In addition, we discussed *Ball v. United States*, 470 U.S. 856, 84 L. Ed. 2d 740, 105 S. Ct. 1668 (1985), in which the Court considered overlapping provisions in a double jeopardy context. In *Ball*, the Court held that overlapping statutes could subject a defendant to double jeopardy. In fact, the Court concluded there was a double jeopardy violation as a result of the convictions and sentences pursuant to the overlapping provisions at issue. In reaching this conclusion, the Court indicated the starting point for such an analysis is the identical elements test, which the Court referred to as a "tool" for discerning legislative intent. Applying that test to the overlapping provisions in question, the Court concluded the elements in the portions of the statutes that overlapped were identical. In addition, the Court emphasized that the ultimate question in double jeopardy cases was to ascertain legislative intent and determine whether the legislature intended two punishments. The Court indicated that even if elements were identical, if it was clear that the legislature intended multiple punishments, a double jeopardy violation did not result. 470 U.S. at 860 n.7, 861. The statutes under consideration in *Ball* did not contain any indication of such an intent. Consequently, the Court applied the rule of lenity and determined the identical elements meant the legislature intended that there be only one punishment. 470 U.S. at 862.

Thus, *Ball* and *Batchelder* shared a focus on overlapping statutory provisions. But in all other respects the analytical framework differed, and, when read together, the two cases illustrate the difference between a due process and a double jeopardy analysis.

Because of these differences, the State is incorrect in concluding that *Schoonover*—a double jeopardy case—is determinative of the due process issue involved in this case.

Moreover, the State is incorrect in suggesting that the identical elements test is applied to the entire statute rather than the overlapping provisions. *Ball*, 470 U.S. at 860, illustrates otherwise, and, certainly, *Campbell*, 279 Kan at 16-17, applies the elements test to the overlapping provisions. Additionally, in *Schoonover*, we stated that the initial inquiry when attempting to discern legislative intent was to apply the identical elements test to the overlapping provisions. 281 Kan. at 502-03. We acknowledge that we used some confusing language in *Schoonover* when we stated: "[W]hile the overlap gives rise to the special sentencing rule imposed in . . . *Campbell* . . . there is not an identity of elements *in the statute* as must be shown under the double jeopardy rule." (Emphasis added.) 281 Kan. at 504.

To clarify, double jeopardy concerns arise if there are identical elements in overlapping provisions of two statutes. Our discussion in *Schoonover* was directed to our reading of the overall statute as part of our effort to discern legislative intent, and it was incorrect to state or imply that there needed to be an identity of elements when both statutes, as opposed to the overlapping provisions, are compared. In *Schoonover*, we did not disagree with *Campbell's* assessment that the elements were identical to the extent of the overlap. Rather, we were impelled to examine the purpose and provisions of the entire statute because of (1) *Ball's* guidance that identical elements are only a tool in discerning legislative intent and (2) our recognition in *Campbell* that the array of statutes dealing with ephedrine was intended to punish separately and repeatedly the possession of the various chemicals utilized in the hazardous methamphetamine manufacturing process. See *Schoonover*, 281 Kan. at 503-04; *Campbell*, 279 Kan. at 7-8.

This intent did not impact the analysis at issue in *Campbell*. If the elements in overlapping provisions are identical, the due process considerations involved in Kansas' identical offense sentencing doctrine apply and a defendant may only be sentenced to the lesser punishment provided for in the identical, overlapping provisions.

This is in contrast to the role of the identical elements test in a double jeopardy analysis. In a double jeopardy analysis, the identical elements test is not absolutely determinative; it is a tool to determine legislative intent and, when considered with the rule of lenity, will usually mean the legislature intended only one punishment. If, however, there is a clear expression of legislative intent to provide multiple punishments for the same conduct, double jeopardy is not violated even if overlapping provisions have identical elements.

Thus, *Schoonover* did not overturn *Campbell*, either explicitly or implicitly, and *Campbell* controls the outcome of this issue. The Court of Appeals correctly determined that, under Kansas' identical offense sentencing doctrine, a defendant, including Thompson, who is convicted of possession of ephedrine or pseudoephedrine with the intent to produce a controlled substance in violation of K.S.A. 65-7006(a) should be sentenced to a severity level 4 drug felony as provided for a conviction of possession of drug paraphernalia with the intent to manufacture methamphetamine in violation of K.S.A. 65-4152(a)(3) because the two statutes contain overlapping, identical elements relating to the knowing possession of ephedrine or pseudoephedrine with the intent to manufacture.

As a result, Thompson's sentence for possession of pseudoephedrine with intent to manufacture is vacated and the case is remanded in order for Thompson to be resentenced to a severity level 4 drug felony.

### Sentence for Manufacture of Methamphetamine

Finally, the State takes issue with Thompson's sentence for one count of manufacture of methamphetamine. Under K.S.A. 65-4159(b), the crime of manufacturing methamphetamine is a severity level 1 drug felony, and the district court imposed a sentence accordingly.

As in the previous issue, Thompson argued on appeal that the district court should have sentenced him to a severity level 4 drug felony sentence under the identical offense sentencing doctrine. The Court of Appeals agreed and held: "[T]he facts of the case

demonstrate that the defendant used drug paraphernalia with an intent to manufacture methamphetamine" and that the "use of drug paraphernalia with intent to manufacture is identical to manufacturing methamphetamine." *Thompson II*, 2008 WL 142103, at *6. The Court of Appeals remanded for resentencing.

STANDARD OF REVIEW

We apply the same standard of review that was applied to the previous issue. Interpretation of a statute is a question of law over which an appellate court has unlimited review. *Drayton*, 285 Kan. at 714; *McCurry*, 279 Kan. at 121.

STATE V. COOPER

Approximately 2 months after the Court of Appeals' decision in *Thompson II*, we considered the same sentencing question before us today and came to the opposite conclusion of the Court of Appeals.

In *State v. Cooper*, 285 Kan. 964, 179 P.3d 439 (2008), this court cited *Fanning* for the conclusion that "[o]ffenses are identical when they have the same elements" and we reiterated that "for sentencing purposes, an appellate court must consider the statutory elements in conjunction with the underlying facts" in order to determine the extent of the overlap between the two provisions. 285 Kan. at 966. The *Cooper* court concluded that K.S.A. 65-4159(a), which defines the offense of manufacture of methamphetamine, and K.S.A. 65-4152(a)(3), which defines the offense of use of drug paraphernalia, are not identical offenses because nothing in the former statute requires the State to prove, as does the latter statute, that a defendant used drug paraphernalia to manufacture methamphetamine. 285 Kan. at 967.

"Although, as a factual matter," *Cooper* further explained, "paraphernalia must have been used to manufacture methamphetamine, the State is not required to prove this fact." 285 Kan. at 967. In addition, the jury would not be instructed that it must find beyond a reasonable doubt that the defendant possessed paraphernalia for the purpose of manufacturing methamphetamine. The *Cooper* court also observed that the legislature designed the statutes to more severely punish those who manufacture meth-

amphetamine and less severely punish those who merely possess drug paraphernalia used to manufacture methamphetamine. 285 Kan. at 967-68.

The Court of Appeals did not have the benefit of the *Cooper* analysis; nevertheless, *Cooper* controls. Thompson's convictions for manufacture of methamphetamine and possession of drug paraphernalia used to manufacture methamphetamine are not identical for sentencing purposes.

Therefore, the Court of Appeals erred in holding that Thompson should have received a lesser, severity level 4 drug felony sentence for his conviction of manufacture of methamphetamine. Manufacturing methamphetamine under K.S.A. 65-4159(a) is not identical to using drug paraphernalia to manufacture methamphetamine under K.S.A. 65-4152(a)(3), and a defendant convicted of manufacturing methamphetamine may be sentenced to a severity level 1 drug felony sentence.

Because the Court of Appeals determined Thompson should have received a lesser, severity level 4 drug felony sentence for his conviction of manufacture of methamphetamine, it did not address his alternative argument that he should have been sentenced using a level 3 drug severity under the holding of *State v. McAdam*, 277 Kan. 136, 83 P.3d 161 (2004). To construct this argument, Thompson suggests in his brief that the State failed to prove and the jury was not instructed to find that the manufacture occurred on or after May 20, 2004, the effective date of legislative amendments which reverse the effect of the *McAdam* holding and make the offense of manufacture of methamphetamine a severity level 1 drug felony. See L. 2004, ch. 125, sec. 1. The case is remanded to the Court of Appeals to consider those alternative issues raised by Thompson.

Affirmed in part, reversed in part, sentence vacated in part, and remanded to the Court of Appeals with directions.