(234 P.3d 853)
No. 101,953

STATE OF KANSAS, *Appellee,* v. PATRICK I. HOOD, *Appellant.*

Opinion filed June 25, 2010.

*Lydia Krebs*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, for appellee.

Before STANDRIDGE, P.J., GREEN and MARQUARDT, JJ.

GREEN, J.: Patrick Hood appeals from his jury trial convictions and sentences for one count of aggravated burglary in violation of K.S.A. 21-3716 and two counts of felony theft in violation of K.S.A. 21-3701(a)(1), (b)(3). Hood first argues that his two felony theft convictions were multiplicitous because the two counts arose from the same conduct and because the conduct constituted only one offense by statutory definition. Nevertheless, although the two counts of felony theft arose from the same conduct, the unit of prosecution under K.S.A. 21-3701(a)(1) allowed for two theft convictions in this case. Thus, under the analytical framework set forth in *State v. Schoonover*, 281 Kan. 453, 133 P.3d 48 (2006), Hood's two theft convictions were not multiplicitous.

Finally, citing *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), Hood argues that his constitutional rights were violated when he received an increased sentence based upon his criminal history that was not proven to a jury beyond a reasonable doubt. Nevertheless, Hood's argument fails under our Supreme Court's decision in *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002). Accordingly, we affirm Hood's convictions and sentences.

Hood's convictions in this case are based on an incident that occurred one night at Yen Ching Restaurant (Yen Ching) in Wichita. At approximately 1 a.m. on June 14, 2007, Cathay Chang was finishing closing duties on the first floor of Yen Ching when she heard a door open upstairs in the restaurant. Yen Ching had closed at 11 p.m. that evening, and Chang thought she was alone in the restaurant.

After calling out her husband's name and hearing no answer, Chang went out the back door of the restaurant to see if her husband's car was in the parking lot. Chang noticed that there was another vehicle, which she did not recognize, parked behind her car in the parking lot. Chang then went back inside the restaurant and tried to call her husband. Chang was unable to reach her husband, and she went back out to the parking lot and wrote down the vehicle's tag number.

When Chang came back inside the restaurant, Hood was walking towards the back door with the bank bag and Chang's purse. Chang attempted to grab her purse from Hood, but Hood hit her on the right side of her head with his hand. When Chang ran inside the restaurant to call her husband and the police, she heard Hood drive away in his vehicle.

Chang testified that the bank bag contained the entire day's sales receipts, over $1,000 in cash, and $10,000 of her jewelry. Chang had taken off her jewelry and placed it in the bank bag when she was cleaning up the restaurant for the night. Chang's purse contained her wallet, medicine, and credit cards.

The following day, the police recovered Chang's jewelry at a residence and returned it to her. The police found Hood sleeping in a running vehicle behind a shed and arrested him. The police found guest checks and credit card receipts from Yen Ching and $168 cash inside the vehicle.

At trial, Hood admitted to stealing the bank bag and purse. Hood testified that he had gone to Yen Ching just before closing, had ordered a drink, and had gone upstairs to the balcony. According to Hood, when he saw Chang take money out of the cash register and place it in the bank bag, he devised a plan to hide in the restaurant and then grab the bank bag when Chang was not look-

ing. Hood hid in an upstairs supply room and waited for everyone to leave. Later, after everyone had left, Hood saw Chang place the bank bag and her purse on top of the bar and then walk towards the back of the restaurant.

According to Hood, he came downstairs, grabbed the money bag and purse, and left the restaurant. Hood testified that as he was attempting to get to his vehicle, he encountered Chang, who tried to grab at him. Hood admitted that he pushed Chang on the side of the head and that she fell to the ground. Hood then got into his truck and drove away from the restaurant. At trial, Hood was unable to explain what happened to all of the money in the bank bag and testified that it had "disappeared into thin air."

A jury found Hood guilty of one count of aggravated burglary and two counts of theft. One of Hood's theft convictions was based on the theft of $1,200 from Chang's, Inc.—Yen Ching Restaurant. Hood's other theft conviction was based on the theft of Chang's purse, its contents, and her jewelry. The trial court sentenced Hood to a controlling sentence of 57 months in prison.

*Multiplicity*

First, Hood argues that his two theft convictions were multiplicitous and violated the Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights.

Issues involving multiplicity and statutory interpretation are questions of law over which an appellate court has unlimited review. *State v. Thompson*, 287 Kan. 238, 243, 200 P.3d 22 (2009).

When reviewing a statute, an appellate court's first task is to " 'ascertain the legislature's intent through the statutory language it employs, giving ordinary words their ordinary meaning.' [Citation omitted.]" *State v. Gracey*, 288 Kan. 252, 257, 200 P.3d 1275 (2009). When a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read the statute to add something not readily found in it. We need not resort to statutory construction when a statute is plain and unambiguous. It is only if the statute's language or text is unclear or ambiguous that we move to the next analytical step, ap-

plying canons of construction or relying on legislative history construing the statute to effect the legislature's intent. *Double M Constr. v. Kansas Corporation Comm'n*, 288 Kan. 268, 271-72, 202 P.3d 7 (2009).

Multiplicity is the charging of a single offense in several counts of a complaint or information. *State v. Scott*, 286 Kan. 54, Syl. ¶ 4, 183 P.3d 801 (2008). The principal danger of multiplicity is that it creates the potential for multiple punishments for a single offense, which is prohibited by the Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights. *State v. Fisher*, 283 Kan. 272, 312, 154 P.3d 455 (2007).

Our Supreme Court in *State v. Schoonover*, 281 Kan. 453, 133 P.3d 48 (2006), announced an analytical framework for determining whether multiple convictions subject a defendant to double jeopardy. The overarching inquiry in this analysis is whether the convictions are for the same offense. This inquiry is broken into two prongs, both of which must be met for there to be a double jeopardy violation. First, do the convictions arise from the same conduct, and second, if the convictions do arise from the same conduct, are there two offenses or only one by statutory definition? 281 Kan. at 496.

*First Prong of Double Jeopardy Analysis—Do the convictions arise from the same conduct?*

Here, the State argues that Hood's two theft convictions did not arise from the same conduct. The State maintains that Hood committed two different acts because he picked up two different pieces of property belonging to two different property owners.

Our Supreme Court in *Schoonover* set forth some factors to consider in determining whether the conduct is the same or unitary under the first prong of the double jeopardy analysis:

"(1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct." 281 Kan. 453, Syl. ¶ 16.

If the convictions do not arise from the same conduct, then the analysis ends. See 281 Kan. at 496-97.

An application of the *Schoonover* factors to the instant case leads to the conclusion that Hood's conduct in taking Chang's purse and the bank bag was unitary. Hood's conduct in taking Chang's purse and the bank bag occurred at the same time and at the same location. Moreover, no intervening event occurred between the taking of Chang's purse and the bank bag. Although the State maintains that a "fresh impulse" motivated the taking of the purse, case law from this court and our Supreme Court indicates that the fresh impulse factor comes into play when at least some time passes between the first act and the second act. Quoting *State v. Kesselring*, 279 Kan. 671, 683, 112 P.3d 507 (2005), our Supreme Court in *Schoonover* stated that " ' "[i]ncidents are factually separate when independent criminal acts have occurred at different times or *when a late[r] criminal act is motivated by a 'fresh impulse.'* " ' [Citation omitted.]" (Emphasis added.) 281 Kan. at 497; see also *State v. Hawkins*, 40 Kan. App. 2d 10, 18, 188 P.3d 965 (2008), *rev. denied* 287 Kan. 767 (2009) (defendant's *later* decision to turn around while running and motion as though he was going to shoot the victim was fresh impulse from earlier event of frightening victim by shooting toward him as he stood in front of restaurant); *State v. Gomez*, 36 Kan. App. 2d 664, 674, 143 P.3d 92 (2006) (fresh impulse separated defendant's criminal conduct where defendant pointed gun at one of the victims, who ran to his car, and then later fired upon the fleeing car with the two victims inside); *State v. Fillman*, 43 Kan. App 2d 244, 254, 223 P.3d 827 (2010) (fresh impulse motivated defendant's second shot into wall where 10-minute period of time passed between victim's attempts to reach for pistol). Here, where the taking of Chang's purse and the bank bag occurred at exactly the same time, there was no fresh impulse that could separate Hood's conduct.

Because the taking of Chang's purse and the bank bag arose from the same conduct, we proceed to the second prong of the double jeopardy analysis.

*Second Prong of Double Jeopardy Analysis—Are there two offenses or only one by statutory definition?*

In regard to the second prong of the double jeopardy analysis, that is, whether the statutory provisions provide for two offenses

or only one, the test to be applied depends on whether the convictions arise from a single statute or from multiple statutes. *Schoonover*, 281 Kan. at 497-98. If the convictions arise from different statutes, the convictions are multiplicitous only when the statutes upon which the convictions arise contain an identity of elements. *Thompson*, 287 Kan. at 244.

When a double jeopardy issue is based on convictions for multiple violations of the same statute, a court applies the "unit of prosecution" test. *Schoonover*, 281 Kan. at 471-72. Under the unit of prosecution test, a court asks how the legislature has defined the scope of conduct comprising one violation of a statute. The statutory definition of the crime determines what the legislature intended as the allowable unit of prosecution. There can be only one conviction for each unit of prosecution. *Thompson*, 287 Kan. at 245; *Schoonover*, 281 Kan. at 497-98.

"The determination of the appropriate unit of prosecution is not necessarily dependent upon whether there is a single physical action or a single victim. Rather, the key is the nature of the conduct proscribed." 281 Kan. at 472. The key to determining the unit of prosecution is legislative intent. 281 Kan. at 471. If the legislative intent is unclear, an appellate court applies the rule of lenity. *State v. Pham*, 281 Kan. 1227, 1248, 136 P.3d 919 (2006).

Here, Hood's two theft convictions arose from the same statute, K.S.A. 21-3701(a)(1), (b)(3), which provides as follows:

"(a) Theft is any of the following acts done with the intent to deprive the owner permanently of the possession, use or benefit of the owner's property:
(1) Obtaining or exerting unauthorized control over property;
. . . .
"[(b)](3) Theft of property of the value of at least $1,000 but less than $25,000 is a severity level 9, nonperson felony."

The focus of K.S.A. 21-3701(a)(1) is on the unlawful taking of an owner's property. Under the plain language of K.S.A. 21-3701(a)(1), the crime of theft occurs by obtaining or exerting unauthorized control over property with the intent to deprive the owner permanently of the possession, use, or benefit of the owner's property.

By including the singular term "the owner" within K.S.A. 21-3701(a)(1), the legislature defined the crime of theft as the unlawful taking of *one owner's property*. K.S.A. 21-3110(13), which is part of the definitions section for the criminal code, defines "owner" as "a person who has any interest in property." This definition limits the term "owner" to a single person. See K.S.A. 21-3110(14) (defining "person" to include individuals, persons, and other entities). The inclusion of the singular term "the owner" within K.S.A. 21-3701(a)(1) indicates the legislature's intention that the unit of prosecution for theft is the unlawful taking of property from a single owner, not from multiple owners.

*State v. Thomas*

Citing *State v. Thomas*, 24 Kan. App. 2d 734, 953 P.2d 1043 (1998), Hood argues that the unit of prosecution in a theft case involving property belonging to two different people depends upon whether the defendant had reasonable notice of the multiple owners.

*Thomas* was a pre-*Schoonover* case in which this court applied the single larceny doctrine to determine that the defendant's two theft convictions were multiplicitous. There, the defendant, who stole property from a single apartment, argued that he had only one general intent to steal the property and was not aware that the property was owned by two different people. In addressing the defendant's argument, this court looked to its previous decision in *State v. Stoops*, 4 Kan. App. 2d 130, 136-37, 603 P.2d 221 (1979), (quoting Annot., 37 A.L.R.3d 1407, 1409-10) and set forth the single larceny doctrine as follows:

" ' "The overwhelming majority of jurisdictions follow generally the so-called 'single larceny doctrine'; that is, that the taking of property belonging to different owners at the same time and place constitutes but one larceny. Various rationales have been propounded in support of this position, perhaps the most common one being that such taking is one offense because the act of taking is one continuous act or transaction, and since the gist of the offense is the felonious taking of property, the legal quality of the act is not affected by the fact that the property stolen belonged to different persons." ' " 24 Kan. App. 2d at 738.

Further quoting from *Stoops*, this court in *Thomas* recognized that offenses are not separate and distinct if they are committed with one intention, one impulse, or one plan:

" 'If we were to adopt the single larceny doctrine, it seems to us the test to be applied to determine if there are separate offenses or only a single offense should be based on whether the evidence discloses one general intent to steal or distinct and separate intents. Each case necessarily would have to be decided on its own facts, and a defendant could be convicted of separate thefts only if the evidence showed the offenses to be separate and distinct and not committed pursuant to one intention, one impulse, or one plan.' " 24 Kan. App. 2d at 738 (quoting *Stoops*, 4 Kan. App. 2d at 139-40).

This court in *Thomas* then applied the single larceny doctrine and concluded that "when an individual commits a theft and takes property belonging to more than one individual, without a reasonable notice that the property belongs to separate individuals, as part of a single plan or scheme, then that taking constitutes a single theft. [Citation omitted.]" 24 Kan. App. 2d at 738.

Hood maintains that because he did not have reasonable notice that some of the contents of the bank bag and the purse belonged to separate people, his two theft convictions are multiplicitous.

Nevertheless, the plain language of K.S.A. 21-3701(a)(1) does not impose a reasonable notice requirement on the crime of theft. Moreover, the rationale for the single larceny doctrine quoted in *Thomas* does not comport with the later double jeopardy and multiplicity analysis from *Schoonover* that this court is required to follow. Quoting from *Stoops* and Annot., 37 A.L.R.3d at 1409-10, this court in *Thomas* stated that the most common rationale that the taking of property belonging to different owners at the same time and place constituted one offense was that the act of taking was one continuous act or transaction, and since the gist of the offense is the unlawful taking of property, the legal quality of the act is not affected by the fact that the property stolen belonged to different persons. 24 Kan. App. 2d at 738. Under *Schoonover*, however, the determination of whether the defendant's act was a continuing act or transaction (unitary or same conduct) is only one of the prongs in the multiplicity analysis. Even if the conduct is unitary, a defendant can still be convicted of two offenses under the same statute if the unit of prosecution, as expressed in the plain language of the statute, allows for the two offenses.

As discussed previously, the unit of prosecution under K.S.A. 21-3701(a)(1) is the unlawful taking of a single owner's property.

Thus, if a defendant takes property from multiple owners, even in a single transaction, K.S.A. 21-3701(a)(1) allows for multiple prosecutions.

Importantly, K.S.A. 21-3701(a)(1) does have an intent element, which arguably could bring the analysis from *Thomas* into play. Specifically, the crime of theft under K.S.A. 21-3701(a)(1) requires the defendant have *the intent to deprive the owner permanently of the possession, use or benefit of the owner's property.* This intent element arguably affects the allowable prosecution under the statute. For example, if a defendant takes property from a single location at a single time and believes that the property belonged to only a single owner, then the defendant did not intend to deprive more than one owner of property. Under this scenario, there could be only one allowable theft prosecution under K.S.A. 21-3701(a)(1). On the other hand, if a defendant takes property from a single location at a single time and the defendant has reasonable notice that the property belonged to multiple owners, then the defendant intended to deprive the multiple owners of the property. Under this latter scenario, there could be multiple theft prosecutions under K.S.A. 21-3701(a)(1). As a result, the analysis from *Thomas* still seems to be relevant to a multiplicity analysis under K.S.A. 21-3701(a)(1).

Even under the analysis in *Thomas*, Hood's conduct in taking the bank bag and Chang's purse would constitute two separate offenses. As the State points out, Hood had reasonable notice that the property he took belonged to two different owners. Hood testified that he watched Chang empty the money from the restaurant's register and place it in the bank bag. Hood also watched Chang place her purse on the bar after everyone had left the restaurant. Those observations, along with the character of the property stolen (a bank bag and a woman's purse), were enough to give Hood reasonable notice that the items he took belonged to two separate entities—the restaurant and Chang. Under the facts of this case, where Hood took property belonging to Chang and the restaurant, with reasonable notice that the property belonged to two different owners, Hood's two theft convictions were not mul-

tiplicitous. As a result, Hood's further argument on this issue, based on *Thomas*, fails.

*Criminal History*

Finally, citing *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), Hood argues that his rights under the Sixth and Fourteenth Amendments to the United States Constitution were violated when he was sentenced to an increased sentence based upon his criminal history, which was not proven to a jury beyond a reasonable doubt.

Hood recognizes that this issue was decided adversely to his position in *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002). This court is duty bound to follow our Supreme Court precedent, absent some indication the court is departing from its previous position. *State v. Merrills*, 37 Kan. App. 2d 81, 83, 149 P.3d 869, *rev. denied* 284 Kan. 949 (2007). Our Supreme Court has consistently cited *Ivory* to hold that the use of prior convictions for sentencing enhancement is constitutional. See *State v. Fischer*, 288 Kan. 470, 476, 203 P.3d 1269 (2009). Because *Ivory* controls, Hood's argument is without merit.

Affirmed.