No. 101,953

STATE OF KANSAS, *Appellee*, v. PATRICK I. HOOD, *Appellant.*

(300 P.3d 1083)

Opinion filed May 17, 2013.

*Lydia Krebs*, of Capital Appellate Defender Office, argued the cause and was on the brief for appellant.

*Julie A. Koon*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Patrick I. Hood was charged with and convicted of two counts of felony theft based upon his admission that he grabbed a bank bag and a purse from a counter in a restaurant and fled the establishment with the stolen items. The Court of Appeals rejected Hood's multiplicity argument that the two theft convictions violated both federal and state constitutional prohibitions against double jeopardy. The panel relied in part on the fact that the stolen property had different owners. *State v. Hood*, 44 Kan. App. 2d 145, 152, 234 P.3d 853 (2010). We granted Hood's petition for review of the Court of Appeals decision, which raised two issues: (1) "The two convictions for theft were multiplicitous, and violated the Double Jeopardy Clause of the Fifth Amendment and Section 10 of the Kansas Constitution Bill of Rights"; and (2) the district court violated Hood's constitutional right to a jury trial by sentencing him to an increased sentence based upon a prior criminal history that was not proved to a jury beyond a reasonable doubt. Hood's sentencing issue has no merit, but we reverse one of his theft convictions as multiplicitous.

## FACTUAL AND PROCEDURAL OVERVIEW

The incident that led to Hood's theft convictions occurred in the Yen Ching restaurant in Wichita. Technically, the business was owned by a corporation named Chang's Inc., although Cathay

Chang testified at Hood's preliminary hearing that *she* owned and ran the Yen Ching restaurant.

On June 14, 2007, Hood entered the restaurant during business hours, purchased a drink, and proceeded to a second-floor balcony. As Hood was noticing that the restaurant patrons were beginning to leave, he saw Chang withdraw money from the register and place it in a bank bag. He decided to hide in a supply room to await an opportunity to grab the bag and flee.

Chang closed the restaurant at 11 p.m. and proceeded to clean up, after placing the bank bag and her purse together on a counter on the first floor. The bank bag contained Chang's jewelry, which she had removed before starting to clean, and over $1,000 from the day's restaurant receipts; the purse contained Chang's wallet, credit cards, and medicine. Eventually, Chang went out the restaurant's back door, providing Hood the opportunity to grab the bag and purse and exit through the front door. Chang and Hood had an encounter in the parking lot, but Hood was able to get away. The police found and arrested Hood the next morning. He was charged with aggravated burglary of the restaurant and two counts of felony theft for taking the bank bag and purse, together with other charges for which he was subsequently acquitted. After the jury convicted Hood, the district court sentenced him to 57 months' imprisonment for aggravated burglary and a 6-month sentence for each of the theft convictions, all to be served concurrently. As indicated, the Court of Appeals affirmed Hood's convictions and sentences. *Hood*, 44 Kan. App. 2d at 146, 154-55.

## MULTIPLICITY

Multiplicity is "the charging of a single offense in several counts of a complaint or information." *State v. Thompson*, 287 Kan. 238, 244, 200 P.3d 22 (2009). We do not permit multiplicity because "it creates the potential for multiple punishments for a single offense, which is prohibited by the Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights." *Thompson*, 287 Kan. at 244 (citing *State v. Fisher*, 283 Kan. 272, 312, 154 P.3d 455 [2007]). Hood contends that because he committed only one theft offense

when he performed the single act of stealing the bag and purse, one of his two felony theft convictions was multiplicitous, *i.e.*, he received an impermissible multiple punishment.

*Standard of Review*

The issue of whether convictions are multiplicitous is a question of law subject to unlimited review. *Thompson*, 287 Kan. at 243; *State v. Schoonover*, 281 Kan. 453, 462, 133 P.3d 48 (2006).

*Analysis*

Currently, this court determines challenges to cumulative punishments imposed in one case under the analytical framework set forth in *Schoonover*:

"In considering a double jeopardy issue, the overarching inquiry is whether the convictions are for the same offense. There are two components to this inquiry, both of which must be met for there to be a double jeopardy violation: (1) Do the convictions arise from the same conduct? and (2) By statutory definition are there two offenses or only one? [Citations omitted.]" 281 Kan. at 496.

The Court of Appeals followed that framework, discussing each component separately, but noting that "[i]f the convictions do not arise from the same conduct, then the analysis ends. See 281 Kan. at 496-97." *Hood*, 44 Kan. App. 2d at 149. With respect to the first inquiry, the panel recited that the State was arguing that Hood's two theft convictions did not arise from the same conduct "because he picked up two different pieces of property belonging to two different property owners." 44 Kan. App. 2d at 149. But the panel then proceeded to consider the factors that *Schoonover* proffered to assist in determining whether the case presents the same, or unitary, conduct:

" '(1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct.' 281 Kan. 453, Syl. ¶ 16." *Hood*, 44 Kan. App. 2d at 149.

The panel concluded that Hood's conduct was unitary because the acts of taking the bank bag and taking the purse occurred at the same time, in the same location, without any intervening event, and without a fresh impulse. 44 Kan. App. 2d at 150. We agree

with that assessment. Hood's snatching of property from the counter and fleeing out the front door was unitary conduct, notwithstanding the fortuitous fact that the stolen property was contained in two bags rather than one. Moreover, we specifically reject the State's argument that Hood experienced a fresh impulse with respect to the purse because his original intent was to steal the bank bag. An impulse that is revised before any action is taken is simply a change in the criminal plan, not an intervening motivator for the new portions of the plan. Unitary conduct, *i.e.*, a singular *actus reus*, is not negated just because the details of the intended theft may have been formed in stages prior to acting on the intent.

Moreover, we would note that the State did not cross-petition for our review of the panel's holding that Hood's conduct was unitary. Nevertheless, we would affirm that ruling and, like the Court of Appeals, our resolution of this double jeopardy issue will turn on the second *Schoonover* component of legislative intent.

The analysis of the second *Schoonover* step—determining whether the defendant committed more than one offense by statutory definition—begins with an assessment of whether the multiple convictions arose from a single statute or from multiple criminal statutes. Where, as here, the multiple convictions are for the same crime defined in a single statute, *i.e.*, theft in K.S.A. 21-3701, the court inquires as follows:

"How has the legislature defined the scope of conduct which will comprise one violation of the statute? Under this test, the statutory definition of the crime determines what the legislature intended as the allowable unit of prosecution. There can be only one conviction for each allowable unit of prosecution. The unit of prosecution test applies under either the Double Jeopardy Clause of the Fifth Amendment or §10 of the Kansas Constitution Bill of Rights." 281 Kan. at 497-98.

*Schoonover* further instructed that "[t]he key to determining the minimum unit of prosecution is legislative intent." 281 Kan. at 471. That determination "is not necessarily dependent upon whether there is a single physical action or a single victim," but rather the driving force "is the nature of the conduct proscribed." 281 Kan. at 472. The Court of Appeals recited those lessons from *Schoonover*, together with the caveat that "[i]f the legislative intent is

unclear, an appellate court applies the rule of lenity. *State v. Pham*, 281 Kan. 1227, 1248, 136 P.3d 919 (2006)." *Hood*, 44 Kan. App. 2d at 151.

The obvious starting point for determining legislative intent is to look at the language of the applicable statute. Here, we are dealing with the following relevant parts of K.S.A. 21-3701, the theft statute in existence at the time of the crime(s):

"(a) Theft is any of the following acts done with intent to deprive the owner permanently of the possession, use or benefit of the owner's property:

(1) Obtaining or exerting unauthorized control over property;

. . . .

"[(b)](3) Theft of property of the value of at least $1,000 but less than $25,000 is a severity level 9, nonperson felony."

In addition, the panel relied upon the definition of "owner" contained in K.S.A. 21-3110(13), which is "a person who has any interest in property."

The recited language clearly tells us that the legislature intended the *actus reus* of the crime of theft to be the "[o]btaining or exerting unauthorized control over property," and the *mens rea* to be the specific "intent to deprive the owner permanently of the possession, use or benefit of the owner's property." K.S.A. 21-3701(a). The Court of Appeals focused on the *mens rea* language, opining that "[b]y including the singular term 'the owner' within K.S.A. 21-3701(a)(1), the legislature defined the crime of theft as the unlawful taking of *one owner's property*." 44 Kan. App. 2d at 152. The opinion was also influenced by K.S.A. 21-3110(13)'s use of the singular form in defining "owner."

The panel's isolation and elevation of the term "owner" in the *mens rea* element of the theft definition creates a misdirection as to the nature of the crime. See *State v. Spencer*, 291 Kan. 796, 821, 248 P.3d 256 (2011) (where statutory construction required, courts not permitted to consider only isolated part or parts of act). Considering the statute as a whole, it is clear that the "nature of the conduct proscribed," *Schoonover*, 281 Kan. at 472, is gaining unauthorized control over *property* rather than the victimization of any particular person. In other words, the gravamen of the offense is clearly a property crime rather than a person crime.

First, as Hood pointed out at oral argument, the statute does not define theft as being one's intent to deprive a property owner, but rather it says that "[t]heft is any of the following *acts*." (Emphasis added.) K.S.A. 21-3701(a). In this case, the *act* that constitutes theft is the taking of the property, *i.e.*, "[o]btaining or exerting unauthorized control over property." K.S.A. 21-3701(a)(1). A defendant's performance of that act is not affected by the happenstance that different items of stolen property may have separate owners or that there may be multiple owners of the stolen property, *i.e.*, more than one person who has some interest in the property as contemplated by the K.S.A. 21-3110(13) definition of "owner." For instance, every depositor of a bank would have some interest in the cash in a bank teller's drawer, as evidenced by each depositor's ability to withdraw some of that cash on demand. Yet, the person who robs that teller of the cash drawer contents has committed a single act of unauthorized control over the property, notwithstanding having affected the ownership interests of many depositors.

Next, the notion that theft is a crime against the property, rather than against each of the owners of that property, is corroborated by the legislature's specific designation of the crime as nonperson. Under K.S.A. 21-3701(b), all severity levels are listed as nonperson offenses.

Further, K.S.A. 21-3701(b) lists several severity levels of the crime, and the punishment escalates based upon the value of the property taken rather than the number or character of the owners affected. An exception to that proposition is found in K.S.A. 21-3701(b)(4), which classifies the theft of property from three separate mercantile establishments within a 72-hour period as a severity level 9 nonperson felony without regard to the value of the property. Nevertheless, that provision's punishment of the unlawful taking from *three* separate owners as only one offense still refutes the Court of Appeals' declaration that the legislature's intent was to define theft based upon the unlawful taking of *one* owner's property.

The Court of Appeals also considered the pre-*Schoonover* case of *State v. Thomas*, 24 Kan. App. 2d 734, 953 P.2d 1043 (1998),

which Hood cited for its application of the single larceny doctrine. The panel noted that *Thomas* relied on *State v. Stoops*, 4 Kan. App. 2d 130, 136-37, 603 P.2d 221 (1979), that in turn quoted from Annot., 37 A.L.R.3d 1407, 1409-10, as follows:

" ' " 'The overwhelming majority of jurisdictions follow generally the so-called "single larceny doctrine"; that is, that the taking of property belonging to different owners at the same time and place constitutes but one larceny. Various rationales have been propounded in support of this position, perhaps the most common one being that such taking is one offense because the act of taking is one continuous act or transaction, and since the gist of the offense is the felonious taking of property, the legal quality of the act is not affected by the fact that the property stolen belonged to different persons.' " ' 24 Kan. App. 2d at 738." *Hood,* 44 Kan. App. 2d at 152.

But *Thomas* appeared to add an element to the test when it declared: "We conclude that when an individual commits a theft and takes property belonging to more than one individual, *without a reasonable notice that the property belongs to separate individuals,* as part of a single plan or scheme, then that taking constitutes a single theft. See Annot., 37 A.L.R.3d 1407." (Emphasis added.) 24 Kan. App. 2d at 738. The annotation cited by *Thomas* does not include the caveat that the taking of property must occur without reasonable notice of separate ownership. Further, as the panel noted in this case, "the plain language of K.S.A. 21-3701(a)(1) does not impose a reasonable notice requirement on the crime of theft." *Hood,* 44 Kan. App. 2d at 153.

Additionally, we do not discern any purpose for such a requirement to be grafted upon the *Schoonover* paradigm. One would presume that, in most instances, a thief will not care a whit who owns the property being stolen, but rather the larcenous act is perpetrated to permanently acquire the property to the exclusion of whomever may have previously laid claim to it. Further, as noted, *Schoonover* instructs us that the unit of prosecution test is specifically *not* driven solely by whether "there is . . . a single victim." 281 Kan. at 472. Accordingly, we need not ruminate on whether Hood would have been reasonably put on notice that a corporation owned part of the contents of the bank bag and that the woman he observed operating and cleaning the restaurant

owned part of the contents of the bank bag, as well as the purse and its contents.

Finally, even if we were to view the use of the singular form of "owner" in the theft statute as sending a mixed signal on legislative intent, the most that could be said is that the statute is ambiguous. Ambiguity triggers the rule of lenity, requiring us to construe the statute in Hood's favor anyway. See *State v. Pham*, 281 Kan. 1227, 1248, 136 P.3d 919 (2006); *Schoonover*, 281 Kan. at 472.

In conclusion, we hold that under the *Schoonover* analysis there was only one unit of prosecution under the theft statute and the second conviction is multiplicitous. We reverse one theft conviction and remand to the district court to vacate the sentence on the second conviction.

## SENTENCING BASED ON CRIMINAL HISTORY

Hood challenges the sentence imposed on his principal crime because it was based upon his criminal history score and the jury was not asked to find the existence of his prior convictions beyond a reasonable doubt. He cites to the watershed case of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), albeit that case specifically excluded prior convictions from its prohibition on judicial factfinding. Hood acknowledges that his argument was specifically rejected by this court in *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002), and subsequently confirmed on numerous occasions. See, *e.g.*, *State v. Adams*, 294 Kan. 171, 185, 273 P.3d 718 (2012). We continue to abide by our interpretation of United States Supreme Court precedent and affirm the use of criminal history in Hood's sentencing.

Affirmed in part, reversed in part, and remanded with directions to the district court.